STATE OF NEW YORK, Plaintiff,

v.

N. STORONSKE COOPERAGE COMPANY, INC. and Michael Greenberg in his capacity as President of N. Storonske Cooperage Company, Inc., Defendants.

No. 87–CV–1351.

United States District Court, N.D. New York.

Nov. 12, 1992.

---

Robert Abrams, Atty. Gen. of the State of New York, Albany, N.Y. (Maureen F. Leary, Asst. Atty. Gen., of counsel), for plaintiff.

Whiteman Osterman & Hanna, Albany, N.Y. (Kevin M. Young, Jonathan Wood, of counsel), for defendants.

## MEMORANDUM—DECISION AND ORDER

McCURN, Chief Judge.

### I. OVERVIEW

This environmental litigation arises from the defendants' alleged contamination of land and water in Schodack, New York. The plaintiff, the State of New York, filed its complaint on October 8, 1987, against defendants N. Storonske Cooperage Co. ("Storonske") and its president, Michael Greenberg, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9657 (1988 & West Supp.1992) and New York common law. Jurisdiction is based upon the existence of a federal question, 28 U.S.C. § 1331 (1988), and supplemental jurisdiction, 28 U.S.C. § 1367 (West Supp.1992). The State generally alleges that the defendants unlawfully contaminated soil and groundwater at a site in Schodack on which Storonske operates a drum reconditioning facility. The State seeks eq-

uitable and monetary relief relating to cleanup of the contaminated site.

In 1989, defendant Greenberg allegedly formed a new company, Container Management Corporation. Like defendant Storonske, Container Management is engaged in the drum reconditioning business. Leary Aff. (7/13/92) at ¶ 33 & exh. "R" (certificate of incorporation). The State contends that Container Management is a successor corporation to Storonske. After forming Container Management, Greenberg passed away and two individuals were appointed co-executors of his estate. *Id.* ¶ 20 & exh. "H", "J".

Currently before the court are motions in which the State seeks the following relief:

(1) to amend its complaint pursuant to Fed.R.Civ.P. 15(a) to add Container Management to the case;

(2) to amend its complaint pursuant to Fed.R.Civ.P. 15(a) to clarify the capacity in which Greenberg has been sued;

(3) to substitute the co-executors of Greenberg's estate as defendants pursuant to Fed.R.Civ.P. 25(a); and

(4) to recover sanctions for Storonske's refusal to consent to such an amended complaint.

On September 1, 1992, the court heard oral argument on the State's motions. The court granted from the bench the State's motion for leave to amend its complaint to assert a claim against Container Management on a theory of successor liability. The court reserved decision on the remaining motions and announced that this memorandum-decision and order on those motions would be forthcoming.

### II. DISCUSSION

In the wake of Greenberg's death, the State seeks to take two procedural steps to protect its ability to recover in the event that it prevails on the merits of this case. First, it seeks to amend (or "clarify", as the State describes it) its complaint as to the capacity in which Greenberg has been sued. More specifically, the State seeks to amend its complaint so as to more clearly describe Greenberg's individual role in causing the contamination. If this relief is granted, the

State would delete any references to Greenberg as being sued merely in his "official" capacity. In the state's view, such an amendment would remove any doubt as to the State's ability to effectuate its second step: to substitute the co-executors of Greenberg's estate as defendants pursuant to Fed.R.Civ.P. 25(a).[1] By clarifying the complaint to assert that the suit is brought against Greenberg in his *individual*—not official—capacity, the State would thereafter be entitled to its proposed substitution under Rule 25(a). *See generally International Ass'n of Machinists v. Estate of Dickey,* 808 F.2d 483 (6th Cir.1987) *("Dickey").*

By moving first to amend its complaint so as to assert claims against Greenberg in his individual capacity, the State purports to evade defendants' argument in opposition to the substitution. Defendants oppose the motion to substitute the co-executors of Greenberg's estate because the complaint's caption expressly states that the suit is against "Michael Greenberg in his capacity as President of N. Storonske Cooperage Co., Inc." Since the caption states that the complaint is asserted against Greenberg in his corporate capacity, defendants maintain that the suit does not implicate him in his individual capacity. Therefore, argue defendants, substitution of the co-executors of Greenberg's *personal* estate would be inappropriate. *See Dickey,* 808 F.2d at 485–86.

### A. Consent to the amendment

■ The State preliminarily argues that the defendants' cannot now oppose amending the complaint because Storonske previously consented to the amendment as part of a settlement agreement. According to the State, Storonske's consent arose from a July, 1989 motion in which the State sought summary judgment against Storonske and Greenberg. While the motion was pending, the parties entered negotiations which ultimately resulted in a settlement. Leary Aff. ¶ 12 & exh. "F", "G". The State contends that under the settlement, it agreed to forego seeking judgment against Greenberg in exchange for judgment on consent against Storonske and consent to a future amendment of the State's complaint. *Id.;* Sommer Aff. (9/3/92) ¶ 7. Storonske, for its part, insists that it never formally consented to such an amendment and that the prerequisite to its consent, a case management order, was never completed. *See* Def.Mem. (8/18/92) at 10–12; Young Aff. (8/18/92) ¶ 8.

Determination of whether Storonske consented to the amendment has no bearing on the matters remaining before the court. The applicable provision of Fed.R.Civ.P. 15(a) requires that the moving party obtain "written consent of the *adverse party* " (emphasis added). The adverse party in this instance is not Storonske; rather, it is Greenberg (or his estate), the party that stands to lose by the amendment. Neither Greenberg nor his co-executors were parties to the alleged agreement in which consent to amendments was stipulated, however; only the State's attorney and Storonske's attorney signed the agreement. *See* Leary Aff. exh. "F", "G".[2] Therefore, neither can be held to any stipulation to that effect. The State's reliance upon Storonske's consent to future amendments of

---

1. Fed.R.Civ.P. 25(a)(1) provides, in pertinent part:

    If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons and may be served in any judicial district....

2. Some confusion may arise because Storonske's counsel is also Greenberg's counsel.

Any confusion does not affect this issue, however, because it is abundantly clear from the documents that counsel signed the agreement only as Storonske's counsel; nowhere does the document state that counsel signed the agreement on Greenberg's behalf, as well. *See* Leary Aff. exh. "F".

Moreover, Greenberg's signature appears on an Interim Consent Order and Judgment. *See* Leary Aff. exh. "G". Again, his name and signature appear strictly in his capacity as president of Storonske. *See Salzman Sign Co. v. Beck,* 10 N.Y.2d 63, 217 N.Y.S.2d 55, 57, 176 N.E.2d 74, 76 (Ct.App.1961).

the pleadings is necessarily rejected insofar as it relates to amendments affecting Greenberg or his estate.

### B. Leave of court to amend

■■■ Of course, Greenberg's failure to consent to the amendment does not entirely preclude the State from amending its complaint. Under Fed.R.Civ.P. 15(a), a party may amend its pleading with leave of the court, even absent consent from the adverse party. *E.g. Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988). While the court has considerable discretion in deciding whether to grant leave to amend, as a rule leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see Salahuddin*, 861 F.2d at 42. The Second Circuit has instructed that the court's discretion in determining whether to grant leave must be exercised in a manner consistent with "the liberalizing 'spirit of the Federal Rules.'" *United States on behalf of Maritime Admin. v. Continental Ill. Nat'l Bank and Trust Co.*, 889 F.2d 1248, 1254 (2d Cir.1989) (citation omitted). Similarly, this court recently noted that "[t]he obvious intent of that language is to evince a bias in favor of granting leave to amend," and that the Supreme Court has interpreted this language as creating a presumption that leave to amend should be permitted in the absence of an apparent or declared reason. *Fox v. Board of Trustees*, 764 F.Supp. 747, 757 (N.D.N.Y.1991) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). With this deferential standard as foundation, the court will discuss the State's arguments supporting its motion to amend.

### 1. Complaint as currently drafted

As the court mentioned at oral argument, the entire nature of this motion is somewhat puzzling. The motion was necessitated by the unusual character of the State's claim against Greenberg. While suing a public official in his "official capacity" is somewhat commonplace, the court candidly notes its unfamiliarity with any case in which a individual is sued in his "official capacity" as an officer of a *private* corporation. Drawing the distinction

between official and individual capacity is frequently necessary in the context of suits against *public* officers because the Eleventh Amendment generally bars suits against the governmental entity itself, thus leaving plaintiffs to seek equitable relief against the public officials who act on behalf of the government. *See, e.g., Dube v. State Univ. of New York*, 900 F.2d 587, 594–95 (2d Cir.1990). The Supreme Court explained this principle in *Kentucky v. Graham*, writing:

> Personal[-]capacity suits seek to impose liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, *an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity*. It is *not* a suit against the official personally, for the real party in interest is the entity.

473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (emphasis added) (citations omitted).

■■■ The Eleventh Amendment, however, does not affect suits against private corporations such as Storonske. Therefore, a corporation may be sued without concern for Eleventh Amendment limitations; there is no need to plead an "official capacity" suit in order to recover against a corporation. Indeed, it is difficult to imagine why a suit against the corporation would ever be asserted against an officer in his official capacity. In other words, as a practical matter the State's declaration that this suit is against Greenberg in his capacity as President of Storonske, as opposed to merely against the corporation itself, draws an unnecessary distinction.

Still, one cannot ignore the fact that the State *did* expressly limit its pleading to Greenberg "in his capacity as President of N. Storonske Cooperage Co., Inc." *See* Complaint at 1. The complaint would have been equally sufficient without that limitation but the State nonetheless undertook

the extra effort to specifically plead it. The court cannot interpret the complaint in a manner that attributes no meaning to that phrase or otherwise renders it superfluous. *Cf., e.g., Jews for Jesus, Inc. v. Jewish Comm. Rel. Council, Inc.*, 968 F.2d 286, 293 (2d Cir.1992) (in the analogous context of statutory construction, noting "the well-established principle that each word of a statute is to be given meaning and not rendered superfluous"). Nor can one ignore the Supreme Court's admonition in *Graham* that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and that "[i]t is *not* a suit against the official personally...." 473 U.S. at 166, 105 S.Ct. at 3105.[3] Why the State felt it necessary to sue both Storonske *and* its president in his official capacity remains puzzling and perhaps superfluous, but the court cannot fairly attempt to reconcile that oddity for the first time at this late date. Instead, the court necessarily interprets the State's phrase "in his capacity as President" of Storonske exactly as it has been interpreted in other cases, *i.e.* to mean that the suit is brought against the entity, not the individual. *Cf. id.* For now, the court attributes to the State's "official capacity" limitation its natural meaning and concludes that the complaint, as currently pleaded, does not implicate Greenberg in his personal capacity.

### 2. Prejudice

While mindful of the preference for liberally allowing amendments of complaints, *see* discussion *supra* p. 182, the court is equally cognizant that " 'the trial court [is]

required to take into account any prejudice' that might result to the party opposing the amendment." *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971)). Considering the course that this litigation has followed as a result of the State's limited pleading against Greenberg, the court cannot now justly allow the State to amend its complaint to state a claim against Greenberg in his personal capacity. An amendment of the complaint today, five years after this suit was commenced, would unduly prejudice Greenberg's estate.

From this suit's inception in 1987 until around the time that the State filed this motion, Greenberg and his estate were lulled into believing that Greenberg faced no personal liability in this case. *See, e.g.,* Young Aff. (8/18/92) ¶ 4. Their belief was grounded in a 1988 discovery dispute which arose during Greenberg's deposition. At the time, the State sought information concerning Greenberg's personal finances in order to determine whether he was capable of contributing to the recovery in the event that he was found personally liable for the contamination. *See* Letter from Leary to Court (4/1/88) at 5 ("Leary Letter"). Greenberg's counsel directed him not to respond to the inquiry because, in counsel's view, questions concerning Greenberg's personal liability fell outside the scope of the complaint and were therefore irrelevant. *See* Letter from Young to Court (3/17/92) at 1–2.

Shortly thereafter, Greenberg's counsel moved in this court for a protective order

---

**3.** Although cited by none of the parties, the court notes that the instant case is distinguishable from the Supreme Court's 1974 decision in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In *Scheuer,* the plaintiffs, the personal representatives of the estates of three students who were killed in May, 1970 during anti-war protests at Kent State University, sought recovery pursuant to 42 U.S.C. § 1983 against various state officials and enlisted members of the Ohio National Guard. 416 U.S. at 234, 94 S.Ct. at 1685. The Court concluded that, based upon a liberal construction of the complaint in its entirety, the plaintiffs had adequately stated claims against the defendants in their

personal capacities. *Id.* at 238, 94 S.Ct. at 1687. The Court's conclusion was based in part upon plaintiff's allegation that the *named defendants* acted intentionally, recklessly, willfully and wantonly against the plaintiffs' decedents. *Id.* at 235 & 238, 94 S.Ct. at 1686 & 1687.

Significantly, there was absolutely no indication in *Scheuer* that the plaintiffs limited their claims to being against the defendants in their official capacities. *See generally id.; see also Bryon v. University of Fla.,* 403 F.Supp. 49 (N.D.Fla.1975). The pleadings in the present case are distinct from those in *Scheuer* because the State here limited its pleading as being against Greenberg in his official capacity.

to bar the State from inquiring into any matters arising from Greenberg's personal conduct. In seeking the order, counsel presented many of the same arguments that are before the court today, namely that the suit is asserted against Greenberg in his official capacity only and that he therefore cannot be held personally liable for any contamination at the Storonske site. *See id.* Significantly, the State's attorney acknowledged Greenberg's arguments and responded by stating, in pertinent part, that "[t]he State is currently contemplating the need to amend the complaint to name Mr. Greenberg personally as well as other parties." Leary Letter at 5. The State's response in this regard can be reasonably viewed as a concession that the complaint, as currently drafted, might not assert a claim against Greenberg personally and would therefore have to be amended. At minimum, the State's representation arguably marks a concession that the complaint is ambiguous with respect to Greenberg's potential liability.

On May 14, 1988, after having considering all of the arguments, including the State's recognition of the possible need to clarify its allegations, the court granted Greenberg's motion for a protective order. *See* Order (5/14/88) at ¶ 3 (provided in Young Aff. (8/18/92) exh. "B"). The court prefaced its ruling by stating that discovery of Greenberg's personal finances was inappropriate "[a]t this time." *Id.* In so ruling, this court manifested its belief that the complaint, in its present form, did not implicate Greenberg personally and that an amended complaint would be necessary to achieve that goal. Since the court issued its order more than four years ago, the State has never taken steps to amend its complaint to assert a claim against Greenberg in his personal capacity, despite its concession of its apparent need to do so. By not taking the elementary step of moving to amend (or "clarify") after conceding the possible need to do so, the State unfairly lulled Greenberg into believing that he was not in danger of personal liability in this suit.

Denial of the State's motion for leave to amend comports with the Second Circuit's standard governing such motions. Most notably, "[t]he court plainly has discretion ... to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990) (citation omitted). The State's five year delay in seeking this amendment is clearly "inordinate." In fact, the Second Circuit has ruled that a mere seventeen month delay in amending a complaint, without an adequate excuse for the delay, would be prejudicial to a defendant and thus justify denial of a motion to amend. *See Cresswell,* 922 F.2d at 72. Moreover, the State has proffered no explanation for its delay in seeking an amendment other than a reiteration of its expectation that the suit would be settled anyway, an excuse that hardly offsets the prejudice caused by the delay.

The prejudice of the delay is most apparent when one considers that Greenberg, the only person having information regarding the allegations of his personal improprieties, died during the State's delay. The State knew of the complaint's ambiguity well before Greenberg's death and could have moved at that time to clarify its allegations. An amendment now would drastically change the complexion of this case at a very late date and, for reasons previously discussed, "it cannot be said that the original complaint provided fair notice" to Greenberg of the proposed new posture of the suit. *Cf. Ansam Assocs., Inc.,* 760 F.2d at 446. Mounting a competent defense to the charges against him without his assistance in preparing the defense would be virtually impossible and highly prejudicial to his estate.

Undue prejudice is among the most important considerations in determining whether to grant leave to amend. *State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981). Considering the delay in seeking this amendment, the fact that Greenberg is deceased, and the State's apparent early knowledge of the ambiguity in its pleading (and failure to act thereon), *see* Young Aff. exh. "A", the court con-

cludes that the State's proposed amendment to state a claim against Greenberg would unduly prejudice the Greenberg estate. Accordingly, the State's motion for leave to amend the complaint to "clarify" that the suit is stated against Greenberg in his individual capacity is denied.

Having established the nature of the suit against Greenberg and denied the motion to amend the complaint, the court necessarily concludes that substitution of the co-executors of Greenberg's personal estate as defendants would be inappropriate. Federal Rule Civ.P. 25(a) allows only for substitution of "proper parties" upon the death of a party. Since the suit itself is not asserted against Greenberg in his personal capacity, subjecting his personal co-executors to liability in this suit would be anomalous. At a minimum, the foregoing analysis compels the court to conclude that Greenberg's co-executors do not constitute "proper parties" within the meaning of Fed.R.Civ.P. 25(a) and thus cannot be substituted into this suit. Accordingly, the motion to substitute Greenberg's co-executors as defendants is denied.

### III.  CONCLUSION

As stated at the close of oral argument, the State's motion for leave of court to amend its complaint to add a successor liability claim against Container Management is granted. The State's motion to amend its complaint with respect to Greenberg is in all respects denied, and the State's motion to substitute the co-executors of Greenberg's estate as defendants is denied. The State's motion for sanctions pursuant to Fed.R.Civ.P. 16(f) is denied on grounds that, even if defendants did not comply with the extant scheduling order (a conclusion which the court does not necessarily reach), its noncompliance was "substantially justified" by its good faith difference of opinion as to the effect of the order. *Cf.* Fed.R.Civ.P. 16(f) ("substantial justification" exception to sanctions).

IT IS SO ORDERED.