**Harry J. KLEIN, Plaintiff,**

v.

**Gregory W. BAISE, Secretary of Transportation of the Department of Transportation of the State of Illinois, and Illinois Convenience & Safety Corp., Defendants.**

**No. 89 C 396.**

United States District Court,
N.D. Illinois, E.D.

Feb. 9, 1989.

Vincent Cainkar, Louis F. Cainkar, Ltd., Burbank, Ill., for plaintiff Harry J. Klein.

E. Lawrence Oldfield, Oakbrook, Ill., for defendant Gregory W. Baise.

Richard Carbonara, Asst. Atty. Gen., Chicago, Ill., for Illinois Convenience & Safety Corp.

## PRELIMINARY INJUNCTION

SHADUR, District Judge.

On January 17, 1989 Harry J. Klein ("Klein") filed a Complaint for Declaratory and Injunctive Relief against Secretary of Transportation Gregory W. Baise ("Baise"), of the Department of Transportation of the State of Illinois [1] and Illinois Convenience & Safety Corp. ("ICSC"), seeking to enjoin the enforcement of a portion of the Illinois Highway Code (Ill.Rev. Stat. ch. 121, ¶ 9–112.3) that governs the placing of advertising on bus shelters and that provides in part:

> The owners may place advertising on the shelters if authorized by the license or permit, provided, however, that no political advertising shall be placed on any shelter on any street or highway at any time and further provided that advertising on shelters shall be limited to one-third of the vertical surface of the shelter.

Klein contends the existence of that statute and its potential enforcement by Baise stops Klein from placing political advertisements of his candidacy for the office of Treasurer of the City of Burbank for the April 4, 1989 consolidated election, in violation of Klein's rights of free speech and to equal protection of the laws guaranteed under the First and Fourteenth Amendments to the United States Constitution.[2]

On January 26, 1989 Klein filed a Motion for Preliminary Injunction, accompanied by the Affidavit of Harry J. Klein and Plaintiff's Memorandum of Law. ICSC has filed an answer to the Complaint (1) admitting it will not allow Klein to advertise because of the statute and its potential enforcement

---

1. Initially Klein's Complaint purported to name Baise in his official capacity, a concept that would run afoul of the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908) teaches an official such as Baise, if he acts in violation of the federal Constitution, is "stripped of official or representative character." Hence this action must rely on the principle stated in *Kentucky v. Graham*, 473 U.S. 159, 169 n. 18, 105 S.Ct. 3099, 3107 n. 18, 87 L.Ed.2d 114 (1985):

   > In an injunctive or declaratory action grounded on federal law, the State's immunity *can* be overcome by naming state officials as defendants. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 [104 S.Ct. 900, 79 L.Ed.2d 67] (1984); *see also Ex parte Young*, *supra*.

This court so advised counsel for the parties when they appeared on Baise's motion for preliminary injunctive relief, and Baise's counsel promptly consented to an amendment of the Complaint on its face to treat the official-capacity allegation as surplusage and to consider Baise as having been sued in the mode characterized by *Ex parte Young* and reconfirmed by such cases as *Pennhurst* and *Kentucky v. Graham*.

2. Of course the claim against a "state actor" such as Baise really sounds in the Fourteenth Amendment, which has been held to incorporate the Bill of Rights guaranties. This order nevertheless follows the universal (though technically inaccurate) practice of referring to the underlying Bill of Rights provision, the First Amendment.

by Baise but (2) denying that its conduct violated Klein's rights. Baise has not filed an answer to the Complaint but has filed a Response in Opposition to Plaintiff's Motion for Preliminary Injunction and a Motion To Dismiss.

This Court has given full consideration to all pleadings filed to this date, to arguments of counsel of all the parties and to relevant authorities. In accordance with Fed.R.Civ.P. ("Rule") 52(a) and 65(d), it is hereby ordered, adjudged and decreed:

1. This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343.

2. This Court's exercise of its discretion in granting a preliminary injunction is guided by the five factors identified in *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380 (7th Cir.1984). This Court finds that issuance of a preliminary injunction is necessary and appropriate for the following reasons:

(a) *Irreparable injury to plaintiff.* This is a typical equity case where the only relief requested by Klein is injunctive and related declaratory relief. No damages are requested from any defendant. Because the election will be held on April 4, 1989, by definition Klein must advertise his candidacy before that date. Any relief given after the election date, or at any time before that date that would not allow adequate preparation of advertisements and publication for a sufficient length of time, will be of no benefit to Klein. Klein cannot easily wait until the end of trial to get that relief and will suffer irreparable harm in the interim that cannot be prevented or fully rectified by a final judgment after trial. Klein's rights of free speech and of access to the electoral process are extremely important First Amendment rights, and even minimal periods of loss of such rights unquestionably constitute irreparable injury (*Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976)).

(b) *Lack of an adequate remedy at law.* As already stated, Klein has not requested an award of damages, but is instead seeking injunctive and declaratory relief. Damages would be difficult if not impossible to calculate even if they were requested. No amount of damages at the end of trial would be adequate to compensate Klein if he were to lose the election because of defendants' actions (and of course there would be no way to determine whether such actions did or did not bear a causal relationship to a lost election).

(c) *Likelihood of success on the merits.* Klein's likelihood of success on the merits is very high. Any absolute restriction on political advertising, such as that imposed by the statute, is content-based in that it prohibits public discussion of an entire topic (*Boos v. Barry,* 485 U.S. 312, 108 S.Ct. 1157, 1163, 99 L.Ed.2d 333 (1988); *Consolidated Edison Co. of New York v. Public Service Commission of New York,* 447 U.S. 530, 537, 100 S.Ct. 2326, 2333, 65 L.Ed. 2d 319 (1980)). Because the statute regulates (or more accurately prohibits) speech on the basis of its content, such action can be sustained "only if the government can show that the regulation is a precisely drawn means of serving a compelling state interest" (*Consolidated Edison, id.* at 540, 100 S.Ct. at 2335; accord, such cases as *Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 45, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983)). "[P]olitical speech is entitled to the fullest possible measure of constitutional protection" (*City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 816, 104 S.Ct. 2118, 2134, 80 L.Ed.2d 772 (1984)). It would be an understatement to say there is a very substantial basis for considering that the statute's ban on political advertising violates the rights of both free speech and equal protection of the laws. No reason suggests itself (and Baise has offered none) for the banning of political advertising on advertising shelters, while all commercial advertising would be allowed. Political speech certainly enjoys the highest constitutional protection, yet the Illinois statute affords it far lower protection than commercial speech (or, more accurately, it affords political speech no protection at all). There is a very high likelihood that such a scheme violates the First Amendment—indeed, commercial speech is a com-

parative latecomer to First Amendment protection and is sometimes perceived as entitled to a lesser degree of protection than noncommercial speech (of which political speech is a paradigm), so the Illinois statute may turn that view of constitutional doctrine directly on its head (*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 505, 513, 101 S.Ct. 2882, 2891, 2895, 69 L.Ed.2d 800 (1981)).[3] Further, the statute also distinguishes among different types of noncommercial speech by allowing all noncommercial speech except political speech. There is also a high likelihood that such a scheme violates the same First (and hence Fourteenth) Amendment provisions concerning free speech as well as the Fourteenth Amendment's Equal Protection Clause.

(d) *Balancing of harms.* Nothing has been presented to this Court that would show any harm to either defendant if a preliminary injunction is entered. Klein is not contesting the time, place and manner restrictions imposed by the statute, but is contesting only the prohibition against political advertising. There can be no doubt that a piece of paper containing political advertising—having the same dimensions, and being placed on the same bus shelter, as a commercial advertisement—does not present any harm at all to defendants, let alone any irreparable harm. *Roland Machinery*, 749 F.2d at 387–88 teaches the balancing of harms to litigants (that is, comparing the harm sustained by plaintiffs if a preliminary injunction were wrongfully denied with the harm sustained by defendants if the preliminary injunction is wrongfully granted) interacts with the likelihood of success on the merits on a sliding scale basis: In capsule form, the more likely the plaintiff is to win, the less heavily the balance of harms needs to weigh in his favor. Here plaintiff has shown a very high probability of winning, and no hardship on defendants has been shown at all, so that *both* components of the sliding-scale analysis weigh heavily in Klein's favor.

(e) *Public interest. Roland Machinery, id.* at 338 requires this Court to consider the consequences to third parties of an order granting or denying preliminary relief. Here the "public interest," as it is termed in the case law, cannot be disserved by issuance of a preliminary injunction—no legitimate interest of any third party has been or can be identified that would be infringed by such issuance. On the contrary, the granting of a preliminary injunction will affirmatively serve the public interest by assisting in informing the electorate about a candidate for election, thus enabling the relevant public (the citizens of the City of Burbank) to exercise their franchise on the basis of the maximum available information.

3. Plaintiff's Motion for Preliminary Injunction is therefore granted.

4. Secretary of Transportation Gregory W. Baise of the Department of Transportation of the State of Illinois, in his individual capacity, Illinois Convenience & Safety Corp., and all attorneys, employees, officers, agents, servants and persons in active concert and participation with either or both of those parties who receive actual notice of this order are hereby enjoined from directly or indirectly enforcing the ban on political advertising contained in Ill.Rev.Stat. ch. 121, ¶ 9–112.3.

5. Klein shall be required to post a bond in the amount of $2,500 pursuant to Rule 65(c), which bond need be secured only by his signature. This Court specifically finds that amount to be adequate security for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained (this is not a finding that defendants have shown they will suffer any such harm if this preliminary injunction is found to have been wrongfully issued).

---

**3.** Justice White's just-cited opinion in *Metromedia* did not command a majority of the Court. But however splintered the Justices' five opinions in that case were, clearly *no* member of the Court subscribed to any notion that noncommercial speech is *less* protected in First Amendment terms than commercial speech—and that untenable notion would seem a necessary precondition to upholding the constitutionality of the statute in this case.

### ORDER

On February 9, 1989 this Court issued its preliminary injunction order (the "Order") in this action, setting a next status hearing date for February 27, 1989 at 8:45 A.M. On February 27 counsel for all three parties to the litigation appeared and confirmed that:

1. This action poses only a question of law as to the constitutionality of Ill.Rev. Stat. ch. 121, ¶ 9–112.3 to the extent that it prohibits political advertising such as that sought to be placed by plaintiff Harry Klein ("Klein") on bus shelters owned by Illinois Convenience & Safety Corp. ("ICSC") located in the City of Burbank, Illinois.

2. Neither defendant contests the facts set out in Klein's Complaint ¶¶ 1–7 but defendant Gregory Baise ("Baise")—who is sued in his individual capacity, see Order at 1–2 n. 1—disputes the legal conclusions stated at Complaint ¶¶ 8–9.

3. Accordingly, no facts are in dispute, and the same legal principles that the parties argued as to the merits of the case on Klein's motion for preliminary injunction are equally applicable to Klein's prayer for final declaratory and injunctive relief. Based on the authorities cited in the "Likelihood of success on the merits" section of the Order, this Court hereby:

(a) declares Ill.Rev.Stat. ch. 121 ¶ 9–112.3 unconstitutional both on its face and as applied to Klein, to the extent that it prohibits political advertising on bus shelters generally and on bus shelters owned by ICSC located within the City of Burbank in particular;

(b) permanently enjoins Baise from enforcing that statute against either or both of Klein and ICSC, in the absence of which enforcement Klein and ICSC are free to contract for Klein's political advertising on ICSC's bus shelters;

(c) permanently enjoins ICSC from refusing to accept political advertising from Klein by reason of that statute; and

(d) orders Baise to pay the costs of this action, including the reasonable attorney's fee of Klein's counsel pursuant to 42 U.S.C. § 1988.

This permanent injunction is the final order on the merits in this action, such finality being unaffected by the anticipated future receipt of the petition for an attorney's fee referred to in decretal paragraph (d).