65 F.3d 168
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Guy Anthony AUBREY, Rev., Plaintiff-Appellee Cross-Appellant,
v.
The CITY OF CINCINNATI, Defendant-Appellant Cross-Appellee,
The Cincinnati Reds, Defendant-Appellee, Defendant-Appellant.
BPS Guard Services; t/a Burns International Security
Services, a New Jersey Corporation, Defendants.
 Nos. 93-4194, 93-4196, 93-4200.
 United States Court of Appeals, Sixth Circuit.
 Sept. 1, 1995.
 
 Before: NORRIS and SILER, Jr., Circuit Judges; and NEWBLATT, Senior District Judge.*
 PER CURIAM.
 
 
 1
 The appeal and cross appeals before the court arise from a series of complicated relationships and interrelationships that were entered into between and among the City of Cincinnati, the Cincinnati Reds, the Cincinnati Police Department and others, the purpose of which was to operate the Riverfront Stadium in Cincinnati as the site of certain functions and events including the Cincinnati Reds' home baseball games. These relationships, and their factual and legal consequences, were brought into question as a result of events occurring at Game two of the 1990 World Series, hosted by the Cincinnati Reds as the National League champions.
 
 
 2
 After plaintiff paid his admission and entered carrying a banner with the message "John 3:16," he was stopped by private security personnel hired by the Reds and taken to a room where they were joined by three City of Cincinnati police officers. Although the banner was temporarily seized, plaintiff was allowed to see the game but was kept under surveillance. Upon completion of the game, the banner was returned to plaintiff and he left. The banner had been temporarily seized under a policy of the Reds to ban banners that were not "in good taste."
 
 
 3
 Thereafter plaintiff sued for damages claiming that this seizure violated his constitutional rights under the first, fourteenth, and ninth amendments of the Constitution. He alleged a conspiracy to deny the rights of persons with a religious viewpoint seeking to exercise their constitutional and legal rights to speak in a public forum. Also asserted were false arrest and imprisonment claims and other state law violations some of which gave rise to claims under the Civil Rights Act of 1964.
 
 
 4
 Early in the litigation, all parties filed motions for summary judgment and partial summary judgment on a variety of issues.
 
 
 5
 On February 25, 1993, the learned district judge granted only plaintiff's motion, ruling that the policy under which the seizure was made was unconstitutionally overbroad and vague. In addition, the district judge denied the motion of the City of Cincinnati for dismissal. The motion was based on the City's claim that plaintiff could show no municipal policy upon which municipal liability could be based under the Civil Rights law, 42 U.S.C. Sec. 1983.
 
 
 6
 In his decisions, the district judge very carefully pointed out what he was and was not deciding, making it clear that only the constitutionality of the policy had been decided. All other claims and issues related to compensatory and punitive damages remained.
 
 
 7
 Moreover, while stating his reasoning in denying the City's motion, the judge's operative order was merely to deny the City's motion, thus leaving the City in the case without a determination as to liability.
 
 
 8
 In entering his separate order for partial summary judgment, the district judge determined that plaintiff was entitled, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to final judgment as a matter of law on the issue that the policy was unconstitutionally overbroad and vague.
 
 
 9
 It is important to stress that while the above language apparently was inserted to permit an interim appeal of an important issue decided by the district judge, he failed to make the traditional findings upon which the 54(b) certification must be based, specifically an "express determination that there is no just reason for delay."
 
 
 10
 This partial summary judgment order was entered on June 16, 1993, and notice of appeal therefrom was timely filed. Thereafter, this court dismissed the appeal without prejudice holding it was not a final judgment and not properly certifiable under Rule 54(b) for immediate appeal. Of course, the parties were left with the appropriate belief that the issue ultimately would be appealable along with the balance of the case when the entire case had been resolved in the district court by final judgment.
 
 
 11
 Thereafter, on September 21, 1993, the parties settled all of the plaintiff's claims for compensatory and punitive damages with the payment to plaintiff of $5,600. On September 22, 1993, an order dismissing the action with prejudice was entered, reserving jurisdiction only to consider plaintiff's pending application for an award of attorney's fees and costs.
 
 
 12
 The parties then proceeded with the appeal and cross appeal of the issues they had earlier sought to appeal under the erroneous 54(b) certification.[1] The issues have been fully briefed and extensively argued and are now before the court.
 
 
 13
 The procedural history and present posture of this case have been significantly obscured by the extremely interesting factual and legal issues in this case and by the importance the parties are placing on both the resolution of the issues and the manner of the resolution.
 
 
 14
 This court, while perfectly willing to resolve these issues when properly before it, now concludes that the issues are not properly presented and not properly resolvable at this time.
 
 
 15
 First, and most importantly, we note that the case has been resolved by settlement and the entry of an order of dismissal with prejudice. While it is true the district court retains jurisdiction to rule upon plaintiff's application for attorney's fees, that is a traditional retention of jurisdiction supplemental to the final resolution of an action whether the resolution is by judgment or by settlement and dismissal. So the effect of the order of dismissal is the termination of this case with prejudice through settlement.
 
 
 16
 Next, and most importantly in analyzing the posture of this appeal, we note that no matter how the issues appealed are resolved here, that resolution will have no effect on the parties in relation to the merits of this now dismissed action. To illustrate: If this court were to uphold the decision of the district court that the language of the policy was unconstitutionally vague and overbroad, it would change nothing between and among these parties as all claims have been dismissed. The same conclusion is applicable if this court were to reverse the district court's conclusion.
 
 
 17
 As to the issue on cross appeal, whether there is any City policy upon which to predicate "Monell" liability, again no matter which way this court were to rule on the merits, it would not impact the parties here vis-a-vis each other.
 
 
 18
 There are only two possible impacts of a decision by this court. First, it would advise the parties how this panel of the court would rule if it were to have the same issue properly presented. Second, it would aid the parties on the issue remaining in the district court as to attorney's fees because it would make it easier to argue who the "prevailing party" was. Indeed, at oral argument, counsel conceded that the appeal was being pursued to deal with the "prevailing party" issue.
 
 
 19
 As to the "prevailing party" issue still in the district court, this case is no different than any other case which has been resolved prior to trial at the district court level. As in every case which has been settled, the determination of who the prevailing party is and what the proper attorney's fees should be always made by the district court based on the settlement resolution and prior rulings. Frequently settlements are entered into only after one or more preliminary rulings in the trial court, which rulings are hotly contested because of their importance to the case. Yet the settlements are agreed upon and consummated because of inherent risks in proceeding. The "prevailing party" has to be determined in this context. The parties simply are not justified in seeking to appeal substantive trial court rulings interlocutorily or even upon final judgment for purposes of determining the prevailing party.
 
 
 20
 What is appealable at the proper time, however, is the district court's determination of attorney's fees which necessarily includes the determination of the prevailing party. But even in that context, the validity of the rulings underlying the district court's award of attorney's fees after settlement are not within the appealable issues.
 
 
 21
 This court has fortunately already provided authority for the resolution of this case. In International Union, United Automobile, Aerospace, Agricultural and Implement Workers of America, v. Dana Corporation, 697 F.2d 718 (6th Cir.1983), this court, sitting en banc, dismissed an appeal which was scheduled for an en banc hearing as moot for lack of a justiciable case or controversy. A labor agreement existed between the Dana Corporation and the union which provided that any disputes over its terms would be resolved by arbitration. In that agreement, the Dana Corporation promised not to communicate with its employees in an "anti union" manner. When the union sought to organize a subsidiary, Dana's president openly opposed the union campaign. Shortly before the election, the union sought and obtained a temporary restraining order which prohibited Dana from making anti-union statements to the employees involved. The president continued to make the anti-union statements and was held in contempt. The temporary restraining order was converted to a preliminary injunction pending arbitration. Dana then appealed the preliminary injunction to this court. Between oral argument and the date of this court's first opinion, the arbitration was held and the arbitrator ruled in favor of the union and awarded relief. Following the award, the parties reached a settlement of all disputes which was belatedly called to our attention after both the initial panel decision and the granting of a rehearing en banc.
 
 
 22
 In discussing the issues, the court held that:
 
 
 23
 [m]ootness is a jurisdictional question. That is, the exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy.... The court may not render an advisory opinion; it is confined to "real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character...." ... "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." ... Jurisdiction, even if once acquired, may abate if interim relief or events resolve all issues in the litigation....
 
 
 24
 We cannot reach the merits of this appeal unless we find that the parties' Settlement Agreement did not render the case moot. Generally, the settlement of a dispute between the parties does render the case moot.... However, there are two major exceptions to this general rule. First, there are instances "in which one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot." ... Second, when the situation is "capable of repetition, yet evading review", the case or controversy requirement of Article III is met. ... If either of these exceptions is demonstrated, then the litigation remains a viable controversy which the federal courts may resolve.
 
 
 25
 697 F.2d at 720-21 (citations omitted).
 
 
 26
 Thereafter, in a factual context not legally dissimilar from that in this case, the court held the appeal was moot. The court held that the issue on appeal--whether the district court had abused its discretion in granting the preliminary injunction--was moot because the order of the court had expired when the parties had arbitrated and settled:
 
 
 27
 It is, therefore, meaningless for us to decide whether the preliminary injunctive relief was proper. Our review of the propriety of the injunction would have no effect on the parties.
 
 
 28
 Id. at 721.
 
 
 29
 As previously noted, any determination made by this court as to whether the policy of the Reds was unconstitutional for vagueness and overbreadth would be meaningless, as all issues and claims including those for both compensatory and punitive damages have been completely resolved by the settlement.
 
 
 30
 In Dana Corp., the court held that "[e]ven if the parties had clearly expressed their definite intention to preserve the neutrality issue, the case would still be moot." Id. at 723. In the present case, the parties claim they all wanted to preserve the vagueness and overbreadth issue for review here. The en banc court in Dana Corp., explained that such intention by the parties would not prevent the case from being moot.
 
 
 31
 The Constitution of the United States, not private litigants, confers jurisdiction on this court to hear cases. History is replete with cases holding that "[w]ant of jurisdiction ... may not be cured by consent of the parties." ... Furthermore, judicial power of the federal courts does not extend "to the adjudication of a difference of opinion."
 
 
 32
 Id. at 723 (citations omitted).
 
 
 33
 As to whether the situation is "capable of repetition, yet evading review", such as to meet the second exception to mootness, the Dana Corp. court was not convinced on the particular facts of that case; specifically, the facts were not likely to recur and there is no reason to assume the union would breach the Settlement Agreement as argued by the appellant, Dana Corp.
 
 
 34
 In the present case, the specific Cincinnati Reds policy challenged has been changed at least twice since the district court decision and possibly a third time. Moreover, the latest change removed any restriction such as that leading to the present action. Thus, it is clear that that situation is not capable of repetition, yet evading review.
 
 
 35
 As already noted, the reservation of the application for attorney's fees for the district court when all other issues have been settled is not uncommon. As a matter of fact and as previously noted, the status of the case including interim rulings are factors to be evaluated along with others in determining both the prevailing party and the extent to which that party prevailed. This court has recently addressed the question of who is a prevailing party. Herren v. City of Jamestown, Kentucky, 39 F.3d 628 (6th Cir.1994) reaffirmed devotion to Kentucky v. Graham, 473 U.S. 159 (1985), where the Supreme Court dealt with the "prevailing party" issue after first recognizing that the Civil Rights Attorney's Fees Award Act, 42 U.S.C. Sec. 1988, does not define prevailing party. It then cited Citizens Coalition for Block Grant Compliance, Inc. v. City of Euclid, 717 F.2d 964 (6th Cir.1983), as establishing the Sixth Circuit's two-part test to determine whether a party who settled litigation was a prevailing party. While this case was under the Equal Access to Justice Act, 28 U.S.C.A. Sec. 2412, the principles for determining the prevailing party are generally applicable.
 
 
 36
 Whether all the issues are resolved in the trial court by settlement or judgment, attorney's fee petitions remain. If resolved by judgment, it is obvious that the trial court rulings are appealable and could be dealt with substantively on appeal. When all issues are resolved by settlement, as here, the rulings made by the court before settlement are not subject to appeal substantively as the case is moot. It cannot be done indirectly in the guise of determining the prevailing party. It is obvious that both the prevailing party determinations and awards of attorney's fees are appealable, even if the balance of the case has been fully resolved by settlement; however, they are determined in the context of how the case was settled and on appeal only from a trial court determination.
 
 
 37
 We now conclude that this case is fully moot; there is no case or controversy remaining. Just as was stated in Dana Corp., "[t]his court is powerless to decide questions that cannot affect the rights of the litigants before it. Therefore, we remand the case to the district court to dismiss as moot." 697 F.2d at 724.
 
 
 38
 This case is remanded to the district court for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Stewart A. Newblatt, Senior Judge of the United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The issues included not only whether the policy was constitutionally overbroad and vague, as well as several other justifications for an unconstitutional finding, but also whether the City was liable for the alleged constitutional violations by virtue of its policies, practices and/or customs