Kevin ALSTON, *et als,* Plaintiffs,

v.

**VIRGINIA HIGH SCHOOL LEAGUE, INC., Defendant.**

No. CIV. A. 97–0095–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Aug. 19, 1997.

dants' argument that the Court abstain.

Mary Catherine Bauer, ACLU of Virginia Foundation, Richmond, VA, Deborah C. Waters, Rutter & Montagna, L.L.P., Norfolk, VA, Kristen Galles, Equity Legal, Alexandria, VA, for plaintiffs.

James M. Johnson, Robert Craig Wood, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for defendant.

### MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Before this court are the defendant's Amended Answer and Affirmative Defenses, filed December 22, 1999, and memoranda from both parties in support and opposition thereto. In the Amended Answer, the defendant pleads the affirmative defense of qualified immunity from suits for damages under 42 U.S.C. § 1983 and moves for dismissal of the plaintiffs' claim for damages, brought pursuant to § 1983.

### FACTS

The facts of this case are well known to both the parties and the court. Only those facts pertinent to the present opinion will be recounted below.

The plaintiffs, a group of high school girls and their parents, sued the defendant, Virginia High School League, Inc. ("VHSL") under 42 U.S.C. § 1983 for VHSL's promulgation of certain rules and scheduling of girls sports seasons, allegedly contrary to a recommendation from the Governor of Virginia and in violation of the Equal Protection Clause.[1]

The Washington and Jefferson Literary Societies of The University of Virginia began in 1913 what is now known as VHSL. From its inception, the VHSL has promulgated uniform code rules to be followed by its members, public high schools. Over the years, VHSL has grown and experienced change with that growth, a principal change to being administered by the Department of Continuing Education and the University of Virginia, rather than just the Washington and Jefferson Literary Societies. VHSL ultimately became incorporated under the laws of Virginia in 1981. The incorporation stemmed, in part, from VHSL's "desire for greater legislative autonomy and an increased awareness for fiscal independence." (Handbook, Preface).

VHSL has apparently developed to its current status without any intervention of the state. There is no mention of VHSL in the Code of Virginia or the Virginia Register of Regulations, thus revealing no mandate or legislative authority for VHSL's existence. There does, however, appear to be some informal cooperation by the state, as indicated by the two state officials who serve on the VHSL executive committee. (Handbook, Bylaws 12–1–4, 12–1–9) (one appointed from the State Department of Education by the Superintendent of Public Instruction and one appointed from the Virginia General Assembly by the Assembly's education committees).

Other than the two state-appointed executive committee members, the VHSL is intensely local. The general membership of VHSL is exclusively public high schools. (Def. Mem. in Supp. of Qualified Immunity Affirmative Defense at 6.) [*hereinafter* Def. Mem.]. Whether a public high school becomes a member of VHSL is determined by each school's local school board. Principals of the public high schools, as representatives of the member high schools, make up almost the entire voting body of the VHSL. The parties agree that principals are local governing officials. The plaintiffs have consistently alleged that the defendant is a state actor. For over two years from the beginning of this litigation in September of 1997 through October of 1999, the defendant denied having a close enough connection with the state to be considered a state actor. On October 14,

---

1. The substance of the plaintiffs' claims against the defendant are in no way addressed in this opinion.

1999, the parties stipulated that VHSL is a state actor.

## DISCUSSION

The Civil Rights Act provides a broad remedy for individuals whose constitutional rights are violated by persons acting under color of state law. *See* 42 U.S.C. § 1983. There is no provision for immunity or affirmative defense on the face of the statute. *See id.; see also Richardson v. McKnight*, 521 U.S. 399, 403, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997); *Owen v. City of Independence*, 445 U.S. 622, 635, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). However, the Supreme Court has carved out limited instances where some level of immunity applies to certain state actors when the history and tradition of the common law is so deeply rooted as to require immunity in those particular cases. *See Owen*, 445 U.S. at 637, 100 S.Ct. 1398. For example, there exist grants of absolute immunity to states and state agencies, and qualified immunity to various individual government officials when the constitutional violation arises from a discretionary decision made in the scope of the state actor's official position. *See id.* While no other person or group is apparently entitled to immunity, some groups have been expressly denied any form of immunity, such as municipal corporations, school boards, and local governing bodies. *See Monell v. Dep't. of Social Services of the City of New York*, 436 U.S. 658, 662–63, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 296 (4th Cir.1995) ("the Supreme court has left no doubt that municipalities and local governments are not entitled to immunity from suits brought under section 1983"). Although local governing bodies are, in a sense, arms of the state, the Court has distinguished them from state agencies, because local entities clearly enjoy no immunity from § 1983 suits when the allegedly unconstitutional behavior is the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's

officers." *Monell*, 436 U.S. at 690, 98 S.Ct. 2018.

The issue presented to this court is whether the defendant has any form of immunity from the plaintiffs' present claim for § 1983 relief. VHSL does not neatly fit into any of the groups explicitly addressed in cases of controlling authority, so this court must determine if VHSL is particularly analogous to any of the categories of state actors which have been addressed. *See Richardson*, 521 U.S. at 404, 117 S.Ct. 2100 (looking to policy concerns in granting government officials immunity to determine whether immunity could be granted to private individuals). In so doing, it is proper for the court also to look to the history and purposes of the qualified immunity doctrine. *See id.; Berkley*, 63 F.3d at 297.

It is undisputed that the defendant is a state actor. This means, at minimum, that VHSL is a private corporation acting under color of state law for purposes of § 1983 liability. At maximum, being a state actor means that VHSL is so closely supervised, directed and controlled by the state that the actions of VHSL could be considered actions of the state itself. In order to determine where on the state actor spectrum the defendant lies, this court looks to the facts surrounding the existence of VHSL, as recounted in the previous section of this opinion, and its relationship to the state.

One of the defendant's three arguments for qualified immunity is that VHSL, as a state actor, is "the closely supervised agent of the state and its subdivisions and is therefore entitled to the same immunity as other state actors, including state employees." (Def. Mem. at 6.) In making this argument, the defendant alleges that its actions are so closely supervised by the state, that they could fairly be treated as the actions of the state itself. *See id.* Although the defendant does not expressly request the absolute immunity that is granted to sovereign states and their agencies, the court reads this section of the defendant's brief as, in part, arguing that

it is an agency of the state, thereby deserving absolute immunity.[2]

The defendant does not allege sufficient connection with the state to be considered a state agency, or an "agent of the state." The defendant does not allege any state involvement in the creation or promulgation of the VHSL. Nor was this court able to find a single legislative reference to the Virginia High School League that would indicate some state mandate, or legislative support for the defendant's existence. This legislative void with respect to VHSL further rebuts the defendant's argument that actions of the VHSL can fairly be considered actions of the state, thereby meriting immunity. (Def. Mem. at 6.) *See, e.g., Frazier v. Bailey*, 957 F.2d 920, 928 (1st Cir.1992) (holding qualified immunity for private actor deemed state actor for purposes of § 1983 claim available only when action compelled by state mandate). Although state officials can appoint two members of VHSL's executive committee, this appears to be an arrangement grounded in cooperation or tradition, not of a state mandate. Furthermore, in declining to follow the purported recommendation of the Governor in promulgating the rules that are the subject of this litigation, VHSL was not acting under close supervision of the state, but rather on the prerogative of its members' representatives.[3] Finally, the VHSL statement that one of the reasons for incorporation was "greater legislative autonomy" cuts against the argument that VHSL is an agent of the state. In terms of determining whether VHSL should be considered an agency or arm of the state for purposes of immunity, the connection to the state is de minimis as compared to the connection to local government.

VHSL's connections to local government are extensive. The members of the VHSL are exclusively public high schools, which are local government entities. The principals are local government officials who participate in the VHSL in their capacities as representatives of their respective member schools. VHSL performs a public service by scheduling and promulgating rules for its member schools. All of these factors make VHSL's existence and activities akin to that of a local government body.

The defendant asserts that VHSL is not like a local government; however, the defendant's own words belie its assertion. In various memoranda to this court, the defendant asserts that "VHSL is an aggregation of local government officials..acting collectively for the public good," (Def. Mem. at 5), that is "performing the essential government service of organizing public high school athletics," (Def. Reply at 6). The collective action of local government entities (the public high schools) to perform a government service is fairly analogized to a local government body. *See, e.g., Owen*, 445 U.S. at 638, 100 S.Ct. 1398 ("a distinct feature of our Nation's system of governance has been the conferral of political power upon public and municipal corporations for the *management of matters of local concern*") (emphasis added). Municipal corporations and local governing bodies, such as school boards and city councils, enjoy no form of immunity from § 1983 damages actions. *See Monell*, 436 U.S. at 662–63, 98 S.Ct. 2018; *see also Berkley*, 63 F.3d at 296. Like these groups, where local government officials act collectively for the public good of providing government services, VHSL derives no immunity from § 1983 actions.

The defendant's attempts to distinguish itself from a local government are based largely on the fact that VHSL is not sup-

---

**2.** The court also notes that, by defendant's own admission in a subsequent brief, the defendant states that VHSL is not a state agency (apparently in contrast to its earlier argument that it is an agent of the state). (Def. Combined Reply to Pl. Opp'n to Def.'s Mot. for Recons. and Pl. Mem. in Opp'n to Def.'s Qual-ified Immunity Affirmative Defense at 4.) [*hereinafter* Def. Reply]

**3.** This court reiterates that it takes no position at this time as to the propriety of VHSL's contested decisions.

ported by the public treasury and, therefore, could be subject to grave financial pressures if not granted qualified immunity. (Def. Mem. at 6) However, governments are also subject to financial pressures: the fact that there is a public treasury does not mean that a local government cannot suffer severe financial stress, including bankruptcy. Furthermore, the defendant conflates the distinction between individuals and entities when it compares itself to a "flesh and blood individual" and argues that "the purpose of qualified immunity has always been to protect the individual decision-maker ... from risks which the government itself does not have." (Def. Reply at 5 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982))).

When the courts have given qualified immunity to individuals, it has been to individuals in a very literal sense: humans acting independently. *See, e.g., Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (discussing immunity for various officials); *Harlow*, 457 U.S. at 807, 102 S.Ct. 2727 (same). VHSL is not an individual deserving of qualified immunity. That VHSL is considered a "person" is only a legal fiction intended to allow entities to be subject to suit under § 1983 and on various other bases. The public policy supporting grants of qualified immunity to individuals is based, in part, on the notion that public actors should not suffer personal financial distress for making discretionary decisions within their official capacity. *See Berkley*, 63 F.3d at 301 (citing *Owen*, 445 U.S. at 655–56, 100 S.Ct. 1398). A lack of qualified immunity may subject VHSL to financial stress, depending on the outcome of this case at trial, but that loss would not be a personal one. No individual government official who participates in VHSL will personally suffer financial strain as a result of VHSL not having qualified immunity.

The distinction between individuals and entities is one of substance, not, as the defendant would have it, one of semantics. (Def. Reply at 4.) The defendant's elemen-

tary conclusion that, if the individual actors are immune, then the collective group is immune, does not legally follow. (Def. Mem. at 5–6.) In fact, the Fourth Circuit has concluded the opposite, in recognizing the reasoning of the Supreme Court that the policies supporting individual immunity are unpersuasive for entities, stating:

> While there is indeed a long tradition of granting individual legislators at all levels of government a broad immunity from suits based upon their legitimate legislative activities, and though there are undoubtedly strong public justifications for such immunity, the Supreme Court has instructed that the defenses available to an official in a personal capacity action simply "are unavailable" in a suit against a governmental entity.

*Berkley v. Common Council of the City of Charleston*, 63 F.3d 295, 300–01 (4th Cir. 1995) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)); *see also Owen*, 445 U.S. at 638 n. 18, 100 S.Ct. 1398. The defendant's arguments urging the court to grant VHSL qualified immunity because (1) it is made up of a group of local government officials, all of whom have individual qualified immunity; and (2) its relationship to the state is akin to that of state employees who have qualified immunity are unpersuasive because of the defendant's failure to recognize that the policy behind individual immunity is unavailable as to an entity.

Furthermore, in refusing to grant the defendant immunity because VHSL is analogous to a local governing body, this court finds the reasoning of the Supreme Court for denying qualified immunity to municipalities and local governments persuasive. In *Owen*, the Court discusses at length the remedial purpose of § 1983 and the importance of its applications to local governments. *See Owen*, 445 U.S. at 651, 100 S.Ct. 1398. There, the Court held,

> A damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees ... [y]et owing to the qualified immunity enjoyed by most government officials, many victims of

municipal malfeasance would be left remediless if the city were also allowed to assert a good-faith defense ... the injustice of such a result should not be tolerated.

*Id.*

This applies to the plaintiffs in the present matter who, if they can prove a violation of § 1983, would have no financial remedy if both the individuals making decisions and the collective entity enjoy immunity. The Supreme Court counsels against making injunctive relief the only remedy for constitutional violations, reasoning that compensation will serve as a deterrent for future § 1983 violations. *See id.* at 651–52, 100 S.Ct. 1398. Also, the Court warns that the absence of a damage remedy would provide little incentive for victims of unconstitutional behavior to seek redress, thereby having the potentially "deleterious effect of freezing constitutional law in its current state of development." *Id.* at 651 n. 33, 100 S.Ct. 1398. Finally, in discussing the propriety of denying qualified immunity to a municipality, the Court states that "Elemental notions of fairness dictate that one who causes a loss should bear the loss." *Id.* at 654.

The factual situation of VHSL requires application of the Supreme Court's authoritative reasoning in qualified immunity cases for local governments. Thus, because the defendant is closely analogous to a local government body and the there is no immunity for such bodies, this court finds that the defense of qualified immunity is unavailable to the defendant.

In its final argument, the defendant claims that VHSL is not a private actor who falls into the group of private actors, acting under color of state law, who get no immunity. (Def. Mem. at 7.) This argument is misplaced, because it makes reference to a class of actors who get no immunity when they conspire with state actors to violate the constitution (and, the defendant again blurs the distinction between entity and individual). As the defendant properly concludes, the plaintiffs allege no such conspiracy. (Def. Mem. at 7.)

As an addendum to its final argument, the defendant claims that, as an alternative to qualified immunity, VHSL should be permitted to argue good faith as an affirmative defense to the § 1983 damages claim. The defendant relies on the Supreme Court case of *Richardson v. McKnight,* 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), in support of its argument for the availability of a good faith defense. (Def. Mem. at 9). The plaintiffs counter with the argument that *Richardson* applies the good faith defense to private, not state, actors. (Pl. Mem. in Opp'n at 9). Both parties erroneously rely on *Richardson* in support of their good faith arguments. In *Richardson,* the Supreme Court expressly declined to reach the issue of whether good faith was available as an affirmative defense. *See* 521 U.S. at 413–14, 117 S.Ct. 2100. On the other hand, in *Owen,* the Court directly addressed the issue of good faith in relation to entities whose members may have acted unconstitutionally, but in complete good faith. *See* 445 U.S. at 641, 100 S.Ct. 1398. In *Owen,* the Court held that damages can be awarded against municipal governments for violations expressly found to have been committed in good faith. *See id.*("one searches in vain for much mention of qualified immunity based on the good faith of municipal officers"). Therefore, the issue of good faith on the part of VHSL's members' representatives is irrelevant to the application of qualified immunity to VHSL as an entity.

For these reasons, this court finds that the defendant is not entitled to any form of immunity. Therefore, the defendant's motion to dismiss the plaintiffs' claim for monetary relief under § 1983 is DENIED.

An appropriate order this day shall issue.

### ORDER

Upon consideration of (1) the defendant's December 22, 1999 Amended Answer and Affirmative Defenses, asserting an affirmative defense of qualified immunity and moving to dismiss the plaintiffs' Second Claim for Relief: Equal Protec-

tion, brought pursuant to 42 U.S.C. § 1983; (2) the defendant's December 22, 1999 Memorandum in Support of Qualified Immunity Affirmative Defense; (3) the plaintiffs' February 3, 2000 Memorandum in Opposition to Defendant's Qualified Immunity Defense; and (4) the defendant's February 22, 2000 reply brief thereto, and for the reasons stated in the accompanying Memorandum Opinion, it is this day

ADJUDGED AND ORDERED

as follows:

(1) The defendant's affirmative defense of qualified immunity shall be, and hereby is, REJECTED.

(2) The defendant's motion to dismiss the plaintiffs' Second Claim for Relief shall be, and hereby is, DENIED.