# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1304

_____

| | | |
|---|---|---|
| Lawrence D. Johnson and | * | |
| Marvin Rumery, | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| Outboard Marine Corporation; Kirk | * | |
| Brumbaugh; Mark Quandahl; David | * | |
| L. Pekarek; Terry Wagner; William | * | |
| Jarrett; Margaret A. McDevitt; | * | |
| Cosmopolitan Service Corp., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 19, 1998

Filed: March 24, 1999

_____

Before BEAM, MAGILL, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BEAM, Circuit Judge.

Armed with a valid writ of execution directing him to levy on personal property of a debtor corporation at the residence address of the corporation's secretary, a deputy sheriff seized a boat and trailer parked in the driveway. It was later determined that the boat and trailer were not property of the corporation, and thus not subject to levy, and they were released to the owners. The owners filed this action

against the sheriff and deputies, as well as creditors and creditors' counsel, under 42 U.S.C. § 1983 alleging constitutional violations under the Fourth and Fourteenth Amendments. The district court[1] granted summary judgment to the sheriff and deputies, and dismissed the other defendants, all on the basis of qualified immunity. Plaintiffs appeal. We affirm the judgment of the district court.

## I.    BACKGROUND

The essential facts are not in dispute. Following a default judgment for approximately $ 650.00 against Starfish Marine, Inc., a Lancaster county court issued a valid writ of execution. The writ instructed the sheriff of Lancaster County to execute, or levy, on "any and all personal property of the judgment debtor located at 1812 W. Arlington, Lincoln, NE." Deputy Pekarek determined that the judgment debtor had been dissolved for nonpayment of taxes. He tried to execute the writ at the above address on September 16, 1996. No one answered the door, so Pekarek left a civil process card with instructions to contact him. At the same time, Pekarek noticed a boat and trailer parked in the driveway. He subsequently learned that the trailer was registered to Marvin Rumery of 1812 W. Arlington, but was unable to determine ownership of either the boat or the trailer.

Three days later, Deputy Pekarek again attempted to contact the occupants of the W. Arlington address, was unsuccessful, and left another card. He then learned from the Secretary of State that Marvin Rumery had been the secretary of Starfish Marine, and Lawrence Johnson had been the president and treasurer. He was told by a more senior deputy that officers of a "status II corporation"[2] had no protection and

---

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2] We are not certain, and the record does not disclose, what type of special entity, if any, the deputies may have been discussing when they referred to a "status

their assets were subject to levy to satisfy the judgment. On September 24, Pekarek phoned the Rumery residence and left a message stating that he was attempting to serve the writ, and that he intended to levy on the boat in the driveway. Pekarek soon received a phone call from an individual claiming to be Rumery's attorney. Pekarek once again explained his attempts to serve the writ and his intention to levy on the boat.

On September 26, Pekarek failed for a third time to speak with anyone in the house on W. Arlington. Later that day, however, he received a report that Rumery was cleaning out the boat. Pekarek and another deputy went to the W. Arlington address and spoke with Rumery. Rumery stated that the boat was actually owned by his father-in-law, Lawrence Johnson, but could not produce any documentation of ownership for either the boat or the trailer. At the same time, Pekarek also spoke with Rumery's attorney on the phone, who told Pekarek that he could not levy on the boat. Nevertheless, Pekarek seized the boat and trailer and had them towed away.

On October 2, 1996, Rumery and Johnson delivered a Notice of Exemptions to the execution, which was filed with the court the same day. On October 11, the county court ordered the boat and trailer released to Rumery and Johnson.

Plaintiffs then filed this action in district court under 42 U.S.C. § 1983, alleging that the sheriff, deputies, creditors, and creditors' counsel had violated their rights under the Fourth and Fourteenth Amendments of the Constitution.[3] The district court granted summary judgment to the law enforcement defendants based on qualified immunity. The court similarly found that the private defendants were also

---

II corporation."

[3]Plaintiffs also brought state law claims for conversion, trespass to chattels, and abuse of process. After dismissing the section 1983 claim, the district court dismissed the pendant state law claims under 28 U.S.C. § 1367(c)(3).

entitled to qualified immunity and dismissed them from the suit. Rumery and Johnson appeal, contesting the court's findings of qualified immunity.

## II.    DISCUSSION

We review a grant of summary judgment de novo, considering all evidence in a light most favorable to the nonmoving party. See Munz v. Michael, 28 F.3d 795, 798 (8th Cir. 1994). A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See id. We may uphold a grant of summary judgment for any reason supported by the record, even if different from the reasons given by the district court. See Hall v. Lhaco, Inc., 140 F.3d 1190, 1193 (8th Cir. 1998). We find the issue of qualified immunity is misplaced for two reasons. First, the plaintiffs, by their pleadings, do not name any public officials acting in their individual capacities, thus any discussion of qualified immunity is inappropriate. Second, even assuming the defendants were properly pleaded, the plaintiffs have failed to allege facts that amount to a violation of their constitutional rights, thus there is no need for a discussion of qualified immunity.

### A.    The Parties

Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both. See, e.g., Murphy v. Arkansas, 127 F.3d 750, 754 (8th Cir. 1997). The amended complaint does not specify in what capacity the law enforcement defendants are being sued. Aside from the corporate parties and their counsel, the amended complaint names "David L. Pekarek, Terry Wagner, William Jarrett." Pekarek and Jarrett are deputy sheriffs and Wagner is the sheriff of Lancaster County. This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her

official capacity. See Artis v. Francis Howell North Band Booster Ass'n Inc., 161 F.3d 1178, 1182 (8th Cir. 1998); Murphy,127 F.3d at 754. Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants. See Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989); Egerdahl v. Hibbing Comm. College, 72 F.3d 615, 619-20 (8th Cir. 1995). Absent such an express statement, the suit is construed as being against the defendants in their official capacity. A suit against a public employee in his or her official capacity is merely a suit against the public employer. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). Qualified immunity is not a defense available to governmental entities, but only to government employees sued in their individual capacity. And because the pleadings are construed as a suit against the county, the only issue raised on appeal, qualified immunity, is irrelevant.

A political subdivision may not generally be held vicariously liable under section 1983 for the unconstitutional acts of its employees. See Monell v. Department of Soc. Servs.., 436 U.S. 658, 694 (1978). A political subdivision may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional policy or custom of the subdivision. See id.; Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) ("policy" is an official policy, a deliberate choice of a guiding principle or procedure made by an official with authority, "custom" is a persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization). Rumery and Johnson have failed to allege facts—or produce evidence—showing that the deprivation of their property was the result of a policy or custom of Lancaster county. In short, the plaintiffs have presented nothing that would indicate liability on the part of the county. Thus, summary judgment was proper.

Private actors may incur section 1983 liability only if they are willing participants in a joint action with public servants acting under color of state law. See Miller v. Compton, 122 F.3d 1094, 1098 (8th Cir. 1997). The plaintiffs must establish, at the very least, an agreement or meeting of the minds between the private and state actors, and a corresponding violation of the plaintiffs' rights under the Constitution or laws of the United States. See Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993). Since the plaintiffs have failed to establish that a state actor violated their rights under the Constitution or laws of the United States, their claims against the private actors must also fail.

## B.    Constitutional Violations

Even assuming there was no defect in the pleadings and the plaintiffs properly named the deputies and the sheriff in their individual capacities, the plaintiffs' case must fail because there are no alleged facts or evidence that suggest a violation of their rights under the Constitution or statutes of the United States, a prerequisite to section 1983 liability. In section 1983 actions against public officials in their individual capacity, a plaintiff must show that the defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A necessary precursor to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted, is the determination of whether the plaintiff has asserted a violation of a constitutional right *at all*. See Siegert v. Gilley, 500 U.S. 226, 232 (1991) (emphasis added). Resolution of this purely legal question allows courts to expeditiously weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time-consuming preparation to defend the suit on its merits. See id.

Plaintiffs allege violations of the Fourth and Fourteenth Amendments. The Fourth Amendment prohibits, *inter alia*, unreasonable searches and seizures by

government actors.  In the context of the Fourth Amendment, a seizure of property occurs whenever there is "some meaningful interference with an individual's possessory interest in that property." Soldal v. Cook County, 506 U.S. 56, 61 (1992). The boat and trailer were undoubtedly "seized" for purposes of the Fourth Amendment when Pekarek levied on them and had them towed away.  The question is whether there was anything unreasonable about the seizure which would place it among those prohibited by the Fourth Amendment.  The district court found Pekarek's actions objectively reasonable under the facts.  The deputy was executing a valid writ on property located at the given address, property which he had reason to believe was the same type of property handled by the debtor corporation.  Pekarek was informed by a superior that, even if the property was not corporate property, Rumery, as an officer of the dissolved corporation, had no protection from an execution to satisfy the judgment.   Rumery was cleaning out the boat, some indication that it was soon to be moved or hidden, and Rumery could not produce any documentation of ownership for either the trailer or the boat.   The boat was levied upon in the daylight hours in Rumery's driveway so there were few of the privacy concerns often associated with Fourth Amendment analysis.  We agree with the district court that the seizure was not unreasonable.  See id. at 71-72; Coleman v. Watt, 40 F.3d 255, 263 (8th Cir. 1994).

The plaintiffs' only argument that the execution was an unreasonable seizure, is that Pekarek was wrong in his belief that he could levy on the boat and trailer, and Rumery's attorney told him so at the time of the levy.  This fails for two reasons. First, the fact that Pekarek was in error does not in itself make the seizure unreasonable.   Cf. Hill v. California, 401 U.S. 797 (1971) (officer who makes a reasonable mistake in executing an arrest warrant and arrests the wrong person does not violate the Fourth Amendment).  Second, it cannot seriously be suggested that a deputy has an obligation to follow or even believe the legal advice given by a stranger

under these facts.  Failure to heed the threats or warnings of Rumery's attorney did nothing to make the seizure unreasonable for purposes of the Fourth Amendment.[4]

The plaintiffs also claim they were deprived of their property without due process of law in violation of the Fourteenth Amendment.  This claim cannot stand.  Due process is a flexible concept, and its procedural protections will vary depending on the particular deprivation involved.  See Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  "In general, due process requires that a hearing before an impartial decisionmaker be provided at a meaningful time, and in a meaningful manner." Coleman, 40 F.3d at 260.  In cases with similar facts, courts have uniformly held that a prompt post-deprivation hearing satisfies due process.  See id. at 260 & n.2 (collecting cases).  Plaintiffs have not argued that the hearing on October 11 was not meaningful or reasonably prompt.  Therefore, on the face of these facts, due process was satisfied and there was no Fourteenth Amendment violation.

This is simply a case involving a levy on personal property to satisfy a judgment. It was accomplished according to well-established and traditional state law concepts, the validity of which the plaintiffs do not challenge.  The property turned out not to be subject to the levy and it was returned.  To argue that the dispossession becomes unconstitutional simply because the deputy serving the writ should have known these facts beforehand, borders on the frivolous.

---

[4]The mere fact that the plaintiff in possession raised doubts as to the ownership of the property cannot create a constitutional infirmity.  If that were so, every debtor in possession could avoid attachment simply by claiming that his property was actually owned by another.

## III. CONCLUSION

For the reasons set forth above, the judgment of the district court is affirmed.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.