# KENTUCKY, DBA BUREAU OF STATE POLICE *v.* GRAHAM ET AL.

No. 84–849.  Argued April 16, 1985—Decided June 28, 1985

MARSHALL, J., delivered the opinion for a unanimous Court.

*George M. Geoghegan, Jr.,* Assistant Attorney General of Kentucky, argued the cause for petitioner. With him on the brief were *David L. Armstrong,* Attorney General, and *Cathy Cravens Snell.*

*Jack M. Lowery, Jr.,* argued the cause for respondents. With him on the brief was *Hollis L. Searcy.**

---

**Joyce Holmes Benjamin, H. Bartow Farr III, Paul M. Smith,* and *Joseph N. Onek* filed a brief for the National League of Cities et al. as *amici curiae* urging reversal.

JUSTICE MARSHALL delivered the opinion of the Court.

The question presented is whether 42 U. S. C. § 1988 allows attorney's fees to be recovered from a governmental entity when a plaintiff sues governmental employees only in their personal capacities and prevails.

## I

On November 7, 1979, a Kentucky state trooper was murdered. Suspicion quickly focused on Clyde Graham, whose stepmother's car was found near the site of the slaying and whose driver's license and billfold were discovered in nearby bushes. That evening, 30 to 40 city, county, and state police officers converged on the house of Graham's father in Elizabethtown, Kentucky. Without a warrant, the police entered the home twice and eventually arrested all the occupants, who are the six respondents here. Graham was not among them.[1] According to respondents, they were severely beaten, terrorized, illegally searched, and falsely arrested. Kenneth Brandenburgh, the Commissioner of the State Police and the highest ranking law enforcement officer in Kentucky, allegedly was directly involved in carrying out at least one of the raids. An investigation by the Kentucky Attorney General's office later concluded that the police had used excessive force and that a "complete breakdown" in police discipline had created an "uncontrolled" situation. App. to Brief for Respondents 21–22.

Alleging a deprivation of a number of federal rights, respondents filed suit in Federal District Court.[2] Their com-

___

[1] Clyde Graham was killed by a Kentucky state trooper a month later at a motel in Illinois.

[2] Respondents asserted causes of action under 42 U. S. C. §§ 1983, 1985, 1986, and 1988, as well as the Fourth, Fifth, Sixth, Eleventh, and Fourteenth Amendments. Complaint ¶ 13. Because the case was settled, there has been no need below to separate out or distinguish any of these purported causes of action. Before this Court, the parties briefed and argued the case as if it had been brought simply as a § 1983 action and we, accordingly,

plaint sought only money damages and named as defendants various local and state law enforcement officers, the city of Elizabethtown, and Hardin County, Kentucky. Also made defendants were Commissioner Brandenburgh, "individually and as Commissioner of the Bureau of State Police," and the Commonwealth of Kentucky. The Commonwealth was sued, not for damages on the merits, but only for attorney's fees should the plaintiffs eventually prevail.[3] Shortly after the complaint was filed, the District Court, relying on the Eleventh Amendment, dismissed the Commonwealth as a party. Based on its Attorney General's report, the Commonwealth refused to defend any of the individual defendants, including Commissioner Brandenburgh, or to pay their litigation expenses.

On the second day of trial, the case was settled for $60,000.[4] The settlement agreement, embodied in a court order dismissing the case, barred respondents from seeking attorney's fees from any of the individual defendants but specifically preserved respondents' right to seek fees and court costs from the Commonwealth. Respondents then moved, pursuant to 42 U. S. C. § 1988, that the Commonwealth pay their costs and attorney's fees. At a hearing on this motion, the Commonwealth argued that the fee request had to be

---

analyze it the same way. Our discussion throughout is therefore not meant to express any view on suits brought under any provision of federal law other than § 1983.

[3] The complaint states:

"Pursuant to the provisions of 42 U. S. C. Sec. 1988, the Commonwealth of Kentucky, d/b/a Bureau of State Police is liable for the payment of reasonable attorney fees incurred in this action." Complaint ¶ 4(D).

According to respondents, "[p]aragraph 4(D) . . . states the sole basis for including the Commonwealth as a named party." Brief for Respondents 14.

[4] Five thousand dollars came from the city and $10,000 from the county. The remaining $45,000 was to be paid by Commissioner Brandenburgh, both personally and as agent for the "Kentucky State Police Legal Fund." The latter was not a named defendant but presumably represented the interests of the individual officers sued.

denied as a matter of law, both because the Commonwealth had been dismissed as a party and because the Eleventh Amendment, in any event, barred such an award. Rejecting these arguments, the District Court ordered the Common- wealth to pay $58,521 in fees and more than $6,000 in costs and expenses.[5] In a short *per curiam* opinion relying solely on this Court's decision in *Hutto* v. *Finney*, 437 U. S. 678 (1978), the Court of Appeals for the Sixth Circuit affirmed. *Graham* v. *Wilson*, 742 F. 2d 1455 (1984).

We granted certiorari to address the proposition, rejected by at least two Courts of Appeals,[6] that fees can be recovered from a governmental entity when a plaintiff prevails in a suit against government employees in their personal capacities. 469 U. S. 1156 (1985). We now reverse.

## II

This case requires us to unravel once again the distinctions between personal- and official-capacity suits, see *Brandon* v. *Holt*, 469 U. S. 464 (1985), this time in the context of fee awards under 42 U. S. C. § 1988. The relevant portion of § 1988, enacted as the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, provides:

> "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow *the prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs" (emphasis added).

---

[5] Petitioner did not appeal from the award of costs and expenses, and we therefore have no occasion to consider the appropriateness of these portions of the award.

[6] *Berry* v. *McLemore*, 670 F. 2d 30 (CA5 1982) (municipal officials); *Morrison* v. *Fox*, 660 F. 2d 87 (CA3 1981) (same). At least one Court of Appeals appears to have reached the same result as that of the lower court in this case. See *Glover* v. *Alabama Department of Corrections*, 753 F. 2d 1569 (CA11 1985).

If a plaintiff prevails in a suit covered by § 1988, fees should be awarded as costs "unless special circumstances would render such an award unjust." S. Rep. No. 94–1011, p. 4 (1976); see *Supreme Court of Virginia* v. *Consumers Union of United States, Inc.*, 446 U. S. 719, 737 (1980). Section 1988 does not in so many words define the parties who must bear these costs. Nonetheless, it is clear that the logical place to look for recovery of fees is to the losing party—the party legally responsible for relief on the merits. That is the party who must pay the costs of the litigation, see generally Fed. Rule Civ. Proc. 54(d),[7] and it is clearly the party who should also bear fee liability under § 1988.

We recognized as much in *Supreme Court of Virginia, supra.* There a three-judge District Court had found the Virginia Supreme Court and its chief justice in his official capacity liable for promulgating, and refusing to amend, a State Bar Code that violated the First Amendment. The District Court also awarded fees against these defendants pursuant to § 1988. We held that absolute legislative immunity shielded these defendants for acts taken in their legislative capacity. We then vacated the fee award, stating that we found nothing "in the legislative history of the Act to suggest that Congress intended to permit an award of attorney's fees to be premised on acts for which defendants would enjoy absolute legislative immunity." 446 U. S., at 738.[8]

---

[7] See 6 J. Moore, W. Taggart, & J. Wicker, Moore's Federal Practice § 54.70[1], p. 1301 (1985) ("Costs" are awarded "against the losing party and as an incident of the judgment"); 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2666, p. 173 (1983) ("'Costs' refers to those charges that one party has incurred and is permitted to have reimbursed by his opponent as part of the judgment in the action").

[8] We did hold that the court and its chief justice in his official capacity could be enjoined from *enforcing* the State Bar Code and suggested that fees could be recovered from these defendants in their enforcement roles. Because the fee award had clearly been made against the defendants in their legislative roles, however, the award had to be vacated and the case remanded for further proceedings. That fees could be awarded against

Thus, liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant.[9] Cf. *Pulliam* v. *Allen,* 466 U. S. 522, 543–544 (1984) (state judge liable for injunctive and declaratory relief under § 1983 also liable for fees under § 1988).

## A

Proper application of this principle in damages actions against public officials requires careful adherence to the distinction between personal- and official-capacity suits.[10] Because this distinction apparently continues to confuse lawyers and confound lower courts, we attempt to define it more clearly through concrete examples of the practical and doctrinal differences between personal- and official-capacity actions.

Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, *e. g., Scheuer* v. *Rhodes,* 416 U. S. 232, 237–238 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell* v. *New York City Dept. of Social Services,* 436 U. S. 658, 690, n. 55

---

the Virginia Supreme Court and its chief justice pursuant to an injunction against enforcement of the Code further illustrates that fee liability is tied to liability on the merits.

[9] The rules are somewhat different with respect to prevailing defendants. Prevailing defendants generally are entitled to costs, see Fed. Rule Civ. Proc. 54(d), but are entitled to fees only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant. See *Hensley* v. *Eckerhart,* 461 U. S. 424, 429, n. 2 (1983).

We express no view as to the nature or degree of success necessary to make a plaintiff a prevailing party. See *Maher* v. *Gagne,* 448 U. S. 122 (1980).

[10] Personal-capacity actions are sometimes referred to as individual-capacity actions.

(1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon,* 469 U. S., at 471–472. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.[11]

On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. See, *e. g., Monroe* v. *Pape,* 365 U. S. 167 (1961). More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind the deprivation, *Polk County* v. *Dodson,* 454 U. S. 312, 326 (1981) (quoting *Monell, supra,* at 694); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Monell, supra; Oklahoma City* v. *Tuttle,* 471 U. S. 808, 817–818 (1985); *id.,* at 827–828 (BRENNAN, J., concurring in judgment).[12] When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such

---

[11] Should the offical die pending final resolution of a personal-capacity action, the plaintiff would have to pursue his action against the decedent's estate. In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office. See Fed. Rule Civ. Proc. 25(d)(1); Fed. Rule App. Proc. 43(c)(1); this Court's Rule 40.3.

[12] See *Monell,* 436 U. S., at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").

as objectively reasonable reliance on existing law.   See *Imbler* v. *Pachtman*, 424 U. S. 409 (1976) (absolute immunity); *Pierson* v. *Ray*, 386 U. S. 547 (1967) (same); *Harlow* v. *Fitzgerald*, 457 U. S. 800 (1982) (qualified immunity); *Wood* v. *Strickland*, 420 U. S. 308 (1975) (same).   In an official-capacity action, these defenses are unavailable.   *Owen* v. *City of Independence*, 445 U. S. 622 (1980); see also *Brandon* v. *Holt*, 469 U. S. 464 (1985).[13]   The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.   While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions.[14]

With this distinction in mind, it is clear that a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity.   A victory in a personal-capacity action is a victory against the individual defendant, rather than against the

---

[13] In addition, punitive damages are not available under § 1983 from a municipality, *Newport* v. *Fact Concerts, Inc.*, 453 U. S. 247 (1981), but are available in a suit against an official personally, see *Smith* v. *Wade*, 461 U. S. 30 (1983).

[14] There is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra*, local government units can be sued directly for damages and injunctive or declaratory relief.   See, *e. g.*, *Memphis Police Dept.* v. *Garner*, 471 U. S. 1 (1985) (decided with *Tennessee* v. *Garner*) (damages action against municipality).   Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought.   *Alabama* v. *Pugh*, 438 U. S. 781 (1978) *(per curiam)*.   Thus, implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State.   See *Ex parte Young*, 209 U. S. 123 (1908).

In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both.   "The course of proceedings" in such cases typically will indicate the nature of the liability sought to be imposed.   *Brandon* v. *Holt*, 469 U. S. 464, 469 (1985).

entity that employs him. Indeed, unless a distinct cause of action is asserted against the entity itself, the entity is not even a party to a personal-capacity lawsuit and has no opportunity to present a defense. That a plaintiff has prevailed against one party does not entitle him to fees from another party, let alone from a nonparty. Cf. *Hensley* v. *Eckerhart*, 461 U. S. 424 (1983). Yet that would be the result were we to hold that fees can be recovered from a governmental entity following victory in a personal-capacity action against government officials.

### B

Such a result also would be inconsistent with the statement in *Monell, supra,* that a municipality cannot be made liable under 42 U. S. C. § 1983 on a *respondeat superior* basis. Nothing in the history of § 1988, a statute designed to make effective the remedies created in § 1983 and similar statutes, suggests that fee liability, unlike merits liability, *was* intended to be imposed on a *respondeat superior* basis. On the contrary, just as Congress rejected making § 1983 a "mutual insurance" scheme, 436 U. S., at 694, Congress sought to avoid making § 1988 a " 'relief fund for lawyers.' " *Hensley, supra,* at 446 (opinion of BRENNAN, J.) (quoting 122 Cong. Rec. 33314 (1976) (remarks of Sen. Kennedy)). Section 1988 does not guarantee that lawyers will recover fees anytime their clients sue a government official in his personal capacity, with the governmental entity as ultimate insurer. Instead, fee liability runs with merits liability; if federal law does not make the government substantively liable on a *respondeat superior* basis, the government similarly is not liable for fees on that basis under § 1988. Section 1988 simply does not create fee liability where merits liability is nonexistent.

### III

We conclude that this case was necessarily litigated as a personal-capacity action and that the Court of Appeals therefore erred in awarding fees against the Commonwealth of

Kentucky.[15]    In asserting the contrary, respondents point out that the complaint expressly named Commissioner Brandenburgh in both his "individual" and "official" capacities and that the Commonwealth of Kentucky was named as a defendant for the limited purposes of a fee award.    Nonetheless, given Eleventh Amendment doctrine, there can be no doubt that this damages action did not seek to impose monetary liability on the Commonwealth.[16]

The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.[17]    See, e. g., Ford Motor Co. v. Department of Treasury of Indiana, 323 U. S. 459, 464 (1945).    This bar remains in effect when state officials are sued for damages in their official capacity. Cory v. White, 457 U. S. 85, 90 (1982); Edelman v. Jordan, 415 U. S. 651, 663 (1974).    That is so because, as discussed above, "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . . ."    Brandon, supra, at 471.[18]

---

[15] The city and county were sued directly as entities, but that aspect of the case is not before us.

[16] See also n. 3, supra.

[17] The Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity.    Quern v. Jordan, 440 U. S. 332 (1979); Edelman v. Jordan, 415 U. S. 651 (1974).    Because this action comes to us as if it arose solely under § 1983, see n. 2, supra, we cannot conclude that federal law authorized an official-capacity action for damages against Commissioner Brandenburgh to be brought in federal court.

As to legislative waiver of immunity, petitioners assert that the Commonwealth of Kentucky has not waived its Eleventh Amendment immunity.    This contention is not disputed, and we therefore accept it for purposes of this case.

[18] In an injunctive or declaratory action grounded on federal law, the State's immunity can be overcome by naming state officials as defendants. See Pennhurst State School & Hospital v. Halderman, 465 U. S. 89 (1984); see also Ex parte Young, supra.    Monetary relief that is "ancillary" to injunctive relief also is not barred by the Eleventh Amendment.    Edelman v. Jordan, supra, at 667–668.

Given this understanding of the law, an official-capacity action for damages could not have been maintained against Commissioner Brandenburgh in federal court.[19] Although respondents fail to acknowledge this point, they freely concede that money damages were never sought from the Commonwealth and could not have been awarded against it;[20] respondents cannot reach this same end simply by suing state officials in their official capacity. Nor did respondents' action on the merits become a suit against Kentucky when the Commonwealth was named a defendant on the limited issue of fee liability. There is no cause of action against a defendant for fees absent that defendant's liability for relief on the merits. See *supra*, at 167–168. Naming the Commonwealth for fees did not create, out of whole cloth, the cause of action on the merits necessary to support this fee request. Thus, no claim for merits relief capable of being asserted in federal court was asserted against the Commonwealth of Kentucky. In the absence of such a claim, the fee award against the Commonwealth must be reversed.

## IV

Despite the Court of Appeals' contrary view, the result we reach today is fully consistent with *Hutto* v. *Finney*, 437 U. S. 678 (1978). *Hutto* holds only that, when a State in a § 1983 action has been prevailed against for relief on the merits, either because the State was a proper party defendant or because state officials properly were sued in their official capacity, fees may also be available from the State under § 1988. *Hutto* does not alter the basic philosophy of

---

[19] No argument has been made that the Commonwealth waived its Eleventh Amendment immunity by failing specifically to seek dismissal of that portion of the damages action that named Commissioner Brandenburgh in his official capacity. Nor is the Commonwealth alleged to have done so by allowing him to enter the settlement agreement; the Commonwealth did not even have notice of the settlement negotiations.

[20] Brief for Respondents 17; Tr. of Oral Arg. 18.

§ 1988, namely, that fee and merits liability run together. As a result, *Hutto* neither holds nor suggests that fees are available from a governmental entity simply because a government official has been prevailed against in his or her personal capacity.

Respondents vigorously protest that this holding will "effectively destro[y]" § 1988 in cases such as this one. Brief for Respondents 19. This fear is overstated. Fees are unavailable only where a governmental entity cannot be held liable on the merits; today we simply apply the fee-shifting provisions of § 1988 against a pre-existing background of substantive liability rules.

V

Only in an official-capacity action is a plaintiff who prevails entitled to look for relief, both on the merits and for fees, to the governmental entity. Because the Court's Eleventh Amendment decisions required this case to be litigated as a personal-capacity action, the award of fees against the Commonwealth of Kentucky must be reversed.

*It is so ordered.*