Robert J. STACK, Plaintiff,

v.

CITY OF HARTFORD
et al, Defendants.

No. 3:01CV260(JBA).

United States District Court,
D. Connecticut.

Oct. 25, 2001.

James S. Brewer, Erin I. O'Neil–Baker, West Hartford, CT, John T. Forrest, Law Offices of John T. Forrest, LLC, Hartford, CT, for Plaintiff.

James J. Szerejko, Brian P. Leaming, Halloran & Sage, William J. Melley, III, Kenny, Brimmer, Melley & Mahoney, Philip R. Dunn, Jr., O'Keefe, Phelan & Jackson, Stephen Richard Sarnoski, Attorney General's Office, Hartford, CT, for Defendants.

*Ruling on Motion to Dismiss Alexis Perez In His Official Capacity Only [Doc. # 17]*

ARTERTON, District Judge.

Robert Stack filed this civil rights action under 42 U.S.C. § 1983 against the City of Hartford, various police officers on the Hartford police force, Connecticut State Trooper Alexis Perez ("Trooper Perez"), and an unidentified defendant denominated 'Jane Doe' in the pleadings. Stack alleges sundry violations of his rights stemming from the acrimonious denouement of his affair with defendant Lourdes Perez ("Officer Perez"), a Hartford Police Officer and the spouse of Trooper Perez.

Trooper Perez is sued in both his individual and official capacities, and he has moved to dismiss the complaint against him in his official capacity only. For the reasons outlined below, the Court will grant the motion, and Trooper Perez will remain as a defendant in his personal capacity only.

## I. Factual Allegations in Stack's Complaint

### A. The Affair and its Aftermath

As set forth in the complaint, the saga began when Stack, a Massachusetts resident, began dating Officer Perez in November of 1999. During the relationship, she allegedly provided Stack with detailed accounts of illegality afoot in the Hartford police force, and told him that she was well-connected in the department and would never be disciplined. In July 2000, the affair ended badly when Stack learned that Officer Perez had lied to him about her marital status: Stack thought Officer Perez had separated from Trooper Perez in August 1999 and divorced him in March 2000, but apparently the two officers were still married.

On July 31, Stack met Officer Perez in a parking lot in Massachusetts. Officer Perez arrived with the Jane Doe defendant and there was an altercation. As Stack left the rendezvous, Officer Perez shouted that she would "get him" and that she knew others who would assist her in so doing.

Stack filed a police report regarding the incident with his local police department in Massachusetts, obtained a restraining order against Officer Perez in the Massachusetts courts, and contacted the Internal Affairs division of Officer Perez's employer, the Hartford Police Department ("HPD"), to report that Officer Perez had threatened him.

The HPD internal affairs officers, defendants Robert Carlson and Andrew Jaffee, "initially responded as though they were pleased that [Stack] came forward with information" on Officer Perez, because she was "a bad cop" and "a pathological liar." [1]

Later, however, Stack learned that the internal affairs investigation was not being pursued, and that rather than disciplining Officer Perez, HPD was actively assisting Officer Perez in getting the Massachusetts restraining order dissolved. [2] Further, HPD allegedly informed the FBI that Stack had filed a false internal affairs complaint regarding Officer Perez.

Stack claims that Officer Perez and Trooper Perez succeeded in having the Massachusetts restraining order against Officer Perez dissolved by perjuring themselves in a November 2000 Massachusetts state court proceeding.

In addition to his complaints to HPD's internal affairs division, Stack contacted defendant Bruce Marquis, Hartford's Chief of Police. In December 2000, Marquis sent Stack a short letter indicating that HPD's investigation of Officer Perez's conduct had not concluded. Nonetheless, defendant Jaffee, one of the internal affairs officers with whom Stack had initially spoken, allegedly told the Hartford Courant that Stack was "a jealous, scorned lover," and that the investigation was closed. [3]

### B. Stack's Allegations as to Trooper Perez

Stack filed this suit against Officer Perez, Trooper Perez, the City of Hartford, Chief Marquis, Acting Chief Robert Rudewicz, Lt. Carlson of HPD internal affairs, Sgt. Jaffee of HPD Internal Affairs, and 'Jane Doe,' the unidentified woman who Stark claims accompanied Officer Perez to their July 31, 2000 parking lot rendezvous.

While Stack asserts different counts against different defendants, for the pur-

---

**1.** Am. Compl. ¶¶ 46 & 47.

**2.** Am. Compl. ¶ 65.

**3.** Am. Compl. ¶ 134.

poses of this motion it is sufficient to note that he alleges violations of his constitutional rights to free speech, due process and equal protection, and well as state law claims of intentional infliction of emotional distress, defamation and assault.

Stack named Trooper Perez in both his individual and official capacities, and listed him as a defendant in Counts One (First Amendment Retaliation), Two (Due Process), Three (Equal Protection), and Five (Intentional Infliction of Emotional Distress).

The only factual allegations specifically referring to Trooper Perez by name in the Amended Complaint are contained in ¶¶ 34 & 38, which allege that Trooper Perez perjured himself in the November 2000 Massachusetts state court proceeding in which Stacks' restraining order against Officer Perez was dissolved.

Trooper Perez is presumably included, however, in those paragraphs of the Amended Complaint that refer to all defendants. For example, ¶ 84 states, "The individual defendants failed to fully investigate plaintiff's complaint, refused to look at evidence substantiating his complaint, and ultimately sought to discredit and disparage plaintiff in the press and with his employer." While this paragraph nominally applies to Trooper Perez, it is clear that the factual allegations contained therein relate solely to the conduct of the state defendants in this case: the Amended Complaint never specifies any "complaint" by Stack that Trooper Perez failed to investigate, and contains no facts showing that Trooper Perez discredited Stack in the press or with his employer.

"It is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights." *Davidson v. Mann,* 129 F.3d 700, 701 (2d Cir.1997), *quoting Alfaro*

*Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987). Stack's claim against Trooper Perez, when stripped of its factually unsupported boilerplate assertions, is that Trooper Perez lied in the November 2000 Massachusetts state court proceeding. Based on this assertion, he seeks money damages and injunctive relief against Trooper Perez in both his individual and official capacities.

II. Analysis

A. Standard

"A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (citations omitted); *accord Woodford v. Community Action Agency of Greene Cty., Inc.,* 239 F.3d 517, 526 (2d Cir.2001) (citations omitted).

■ In reviewing the sufficiency of a complaint in the context of a motion to dismiss, all well-pleaded allegations of the complaint are treated as true and all inferences are drawn in favor of the plaintiff. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (citations omitted); *Levy ex rel. Immunogen Inc. v. Southbrook Int'l Invs., Ltd.,* 263 F.3d 10, 14 (2d Cir.2001), *citing Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

B. Monetary Damages

■ Stack has requested both money damages and injunctive relief against Trooper Perez in his official capacity as an employee of the State of Connecticut. " 'The real party in interest in an official-capacity suit is the governmental entity and not the named official.' " *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.1993), *quoting Hafer v. Melo,* 502 U.S. 21, 25, 112

S.Ct. 358, 116 L.Ed.2d 301 (1991). "Thus, 'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" *Frank,* 1 F.3d at 1326, *quoting Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Where Stack has named Trooper Perez in his official capacity, he has in effect named the State of Connecticut as a defendant, and any relief sought against Trooper Perez in his official capacity must comport with what Stack could seek if he had in fact named Connecticut as a party.

■ Stack's claim for money damages from Trooper Perez in his official capacity is not cognizable, because "suits against states and their officials seeking damages for past injuries are firmly foreclosed by the Eleventh Amendment." *Ward v. Thomas,* 207 F.3d 114, 119 (2d Cir.2000), *citing Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10–15, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

In his brief in opposition to the instant motion, Stack asserts that 42 U.S.C. § 1983 "abrogates sovereign immunity and allows for suits against a state actor in his official capacity." Pl.'s Opp'n. Mot. Dismiss at 5. While Congress does have the power under the enforcement provisions of the fourteenth amendment to abrogate States' sovereign immunity, *see Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), it has not done so with respect to actions under 42 U.S.C. § 1983 because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

■ Stack correctly notes that a state official who violates federal law "is in that case stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct." *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (emphasis in original, citations and quotations omitted). Accordingly, the Supreme Court has distinguished § 1983 claims from claims "seeking damages from the public treasury," *Scheuer,* 416 U.S. at 238, 94 S.Ct. 1683, and has expressly held that damage actions brought under § 1983 "seeking to impose individual and personal liability on" state officials "are not barred by the Eleventh Amendment." *Id.* Nonetheless, money damages under this theory are only available against state officials in their *individual capacities*—not their official capacities, as Stack claims. *See, e.g., Cruz v. Gomez,* 202 F.3d 593, 595 n. 2 (2d Cir.2000) (in § 1983 suit against state prison warden, "[t]he claim for damages lies only against the defendant [in his] personal capacity").

### C. Injunctive Relief

■ Stack also requests equitable relief against Trooper Perez in his official capacity. Specifically, Stack seeks an injunction ordering Trooper Perez to refrain from offering false testimony under oath in the future. While his complaint contains no allegations that Trooper Perez is likely to perjure himself in the future, in his papers opposing the instant motion, Stack claims that "Trooper Perez has previously demonstrated a willful disregard for the laws against perjury, and, without such injunctive relief, there is no safeguard that he would not do so again." Pl.'s Opp'n. Mot. Dismiss at 7. He further argues that the "facts surrounding ... Officer Perez's attempts to have the restraining order rescinded demonstrate that the plaintiff is in danger of sustaining bodily injury if Trooper Perez is allowed to continue his perjurious ways." *Id.*

Prospective injunctive relief, unlike monetary damages, is available against a state officer in his official capacity under the doctrine of *Ex Parte Young*, 209 U.S. 123, 159–160, 28 S.Ct. 441, 52 L.Ed. 714 (1908): "the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are threatening to violate the federal Constitution or laws." *Burgio & Campofelice, Inc. v. New York State DOL*, 107 F.3d 1000, 1006 (2d Cir. 1997), *quoting* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3566, at 102 (1984). The implied right of action, however, is unnecessary because § 1983 allows for injunctive relief against state officials, and when sued for prospective injunctive relief in his official capacity, a state officer is a "person" for the purposes of § 1983. *Will*, 491 U.S. at 71 n. 10, 109 S.Ct. 2304, *citing Graham*, 473 U.S. at 167 n. 14, 105 S.Ct. 3099 and *Ex parte Young*, 209 U.S. at 159–160, 28 S.Ct. 441.

Nonetheless, a plaintiff seeking to invoke the jurisdiction of the federal courts in order to seek prospective injunctive relief must demonstrate, *inter alia*, that "a federal court decision is likely to redress the injury." *Deshawn E. v. Safir*, 156 F.3d 340, 344 (2d Cir.1998), *citing Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (holding that in order to establish standing, the "prospect of obtaining relief from the injury as a result of a favorable ruling" must not be "too speculative") (internal quotations and citations omitted).

"A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn*, 156 F.3d at 344, *citing City of Los Angeles v. Lyons*, 461 U.S. 95, 105–106, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). The plaintiff in *Lyons* had been stopped by the Los Angeles Police Department for a traffic infraction and placed in a deadly choke hold. In his suit against the city, he sought both monetary damages for the injuries he sustained as a result of the encounter and an injunction preventing the police department from using choke holds without determining whether a suspect posed a risk to an officer's safety. The Supreme Court held that while the plaintiff's claim for money damages was sufficient to confer standing on him to pursue that claim, he did not have standing to request injunctive relief absent a showing that (1) all police officers in Los Angeles choke all citizens they encounter, or (2) the city ordered or authorized police officers to act in such a manner.

In *Deshawn*, the Second Circuit held that a class of juveniles had standing to seek injunctive relief in federal court against future interrogations by a police squad because of the strong likelihood that the challenged interrogation methods would be used again:

> "In contrast [with *Lyons*], the challenged interrogation methods in this case are officially endorsed policies; there is a likelihood of recurring injury because the Squad's activities are authorized in a written memorandum of understanding between the Corporation Counsel and the Police Commissioner. In addition, plaintiffs' complaint alleges that the New York City Police Department 'has plans to and is in the process of instituting Detective Squads in the Family Court buildings in the Bronx, Brooklyn, and Queens."

*Id.* at 344–345.

Stack's claim for prospective injunctive relief must fail under *Lyons* and *Deshawn*,

because he has alleged no facts in the complaint claiming any likelihood of future injury. Even assuming the allegations in his papers opposing this motion are fair inferences drawn from the complaint, these claims are only speculation. The fact that Trooper Perez allegedly lied in the past is not in and of itself enough to confer standing to pursue a claim for injunctive relief.

### III. Conclusion

Stack cannot seek monetary damages against Trooper Perez in his official capacity, and Stack's request for injunctive relief against Trooper Perez is too speculative to confer standing. Thus, Stack has no viable claims against Trooper Perez in his official capacity.

For the reasons stated above, defendant Alexis Perez's Motion to Dismiss [Doc. # 17] in his official capacity only is GRANTED, and Alexis Perez remains a defendant in this suit in his personal capacity only.

IT IS SO ORDERED.