Vernon STANCUNA, Plaintiff,

v.

John SHERMAN, Defendant.

No. 3:07CV00491 (DJS).

United States District Court,
D. Connecticut.

June 27, 2008.

John R. Williams, New Haven, CT, for Plaintiff.

Beatrice S. Jordan, John J. Radshaw, III, Howd & Ludorf, LLC, Hartford, CT, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Vernon Stancuna ("Stancuna") brings this action against the defendant, John Sherman ("Sherman"), pursuant to 42 U.S.C. § 1983, alleging a violation of his right under Fourth Amendment to the United States Constitution to be free from unreasonable searches. Stancuna also brings a claim of trespass under Connecticut common law. Now pending before the court is Sherman's motion for summary judgment (dkt.# 23) pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."). For the reasons that hereafter follow, Sherman's motion for summary judgment (dkt.# 23) is **DENIED.**

## I. FACTS

The facts of this case are relatively brief. Stancuna resides at 85 West Dayton Hill Road in Wallingford, Connecticut ("the Property"). He owns the Property. Sherman is a property assessor for the Town of Wallingford. On March 23, 2004, Officer Jason Haberski ("Haberski") of the Wallingford Police Department observed the presence of unregistered motor vehicles on the Property. In response to Haberski's referral of his observation, Sherman was assigned to investigate and determine whether unregistered motor vehicles were present on the Property and, if so, whether motor vehicle taxes were

owed to the Town of Wallingford for those vehicles.

On April 21, 2004, Sherman, who was driving a vehicle marked as belonging to the Town of Wallingford, went to the Property to conduct his investigation. Sherman parked his vehicle in the driveway located on the Property. The parties disagree as to what happened during Sherman's investigation. According to Sherman, from his vantage point on the driveway, he could see, in plain sight, several motor vehicles parked on the driveway or in the garage. Sherman claims he exited his vehicle and proceeded up the driveway to a door adjacent to the Property's garage; knocked on the door to ascertain whether anyone was home and to announce his presence; and received no response. As a result, he maintains that he proceeded to take photographs of the vehicles on the Property.

Sherman further claims that after a few moments, Stancuna exited the residence and approached Sherman, inquiring who Sherman was and what he was doing. Sherman maintains he advised Stancuna that he was an assessor for the Town of Wallingford and that he was there because of a report of potential unregistered motor vehicles located on the Property. According to Sherman, Stancuna stated that the vehicles were for his business, that some belonged to friends, and that he was fixing them at his residence. Sherman states that subsequently he left the Property. By Sherman's account, he was present on the Property for approximately ten or fifteen minutes, most of which was spent talking with Stancuna. Sherman maintains that he never entered Stancuna's residence, and that he was in the driveway the entire time he was at the Property.

As seen in his deposition testimony, Stancuna provides a different story. Stancuna maintains that, on the day in question, he was inside his house upstairs when he heard a noise from the outside, possibly a door shutting. He looked outside a window and saw Sherman's vehicle parked in his driveway. Stancuna claims that he went downstairs and walked through a breezeway side door into his garage, where he saw Sherman using a video camera. In his deposition, Stancuna testified that the main door to the garage was open, a fact which seems to have surprised him. Stancuna further claims that he had a few words with Sherman, who left the Property shortly thereafter.

## II. DISCUSSION

Stancuna alleges that Sherman violated his Fourth Amendment right to be free from unreasonable searches. He also alleges that Sherman committed trespass under Connecticut law. Sherman argues that Stancuna's claims are barred by the doctrine of res judicata, and that they fail as a matter of law. The court shall discuss the parties' arguments seriatim.

### A. RES JUDICATA

Before the court can analyze the substantive claims at issue here, it must first address Sherman's argument that Stancuna's claims are barred by the doctrine of res judicata. "Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir.2000) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). "Res judicata bars litigation of any claim for relief that was available in a prior suit between the same parties or their privies, whether or not the claim was actually litigated." *Irish Lesbian and Gay Org. v. Giuliani*, 143

F.3d 638, 644 (2d Cir.1998). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *N.L.R.B. v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir.1983). "To prove the affirmative defense a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir.2000).

■ It is undisputed that Stancuna brought an earlier action in this district against the Town of Wallingford and its mayor.[1] The defendants moved for summary judgment on Stancuna's one-count complaint, which the Honorable Janet Bond Arterton granted on May 15, 2007. *See Stancuna v. Town of Wallingford*, 487 F.Supp.2d 15, 17 (D.Conn.2007) (*"Wallingford"*). In *Wallingford*, Stancuna had alleged that the Town of Wallingford and its mayor violated his right to equal protection under the Fourteenth Amendment to the United States Constitution in the form of selective enforcement of Wallingford's zoning regulations and Town Code provisions concerning storage of inoperable and/or unlicensed vehicles and operating an automotive repair business on his residential property.[2] *Id.* Specifically, Stancuna had alleged that the mayor caused Wallingford's Planning and Zoning Department to initiate zoning enforcement proceedings against him for keeping and

repairing motor vehicles at his residence, and that he was subjected to warnings, threats, and harassment from the agents of the Town of Wallingford because of keeping motor vehicles on his property and/or fixing his cars on his property. *Id.* According to Stancuna, other Wallingford residents kept and repaired unlicensed motor vehicles in front of their residences in full view, but no actions were taken against them. *Id.*

In setting forth the background in *Wallingford*, Judge Arterton described Haberski's March 23, 2004 patrol, where he observed apparently unregistered vehicles located on the Property. *Id.* at 19. Judge Arterton then went on to detail the further incidents involving Stancuna and the vehicles located on his property. Those incidents included: (1) complaints made to Wallingford's Planning and Zoning Department; (2) inspections of the Property (some by Haberski) to see if Stancuna had complied with Wallingford's zoning regulations and Town Code provisions concerning the storage of inoperable and/or unlicensed vehicles and the operation of an automotive repair business; and (3) citations and a cease and desist order issued to Stancuna because of his apparent noncompliance with Wallingford's zoning regulations and Town Code provisions. *Id.* at 19–20.

■ There is no question that Judge Arterton's decision in *Wallingford* constituted an adjudication of the merits in that case. In addition, the claims asserted in this case could have been raised in *Wallingford*. "In deciding whether a suit is barred by res judicata, '[i]t must ... be determined that the second suit involves the same "claim"-or "nucleus of operative

---

**1.** *See Stancuna v. Wallingford et al.*

**2.** The court notes that the residential property in *Wallingford* is the Property involved in this case.

fact[s]"-as the first suit.'" *Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 108 (2d Cir.2000) (quoting *Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir.1997)). "To ascertain whether two actions spring from the same 'transaction' or 'claim,' we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations...." *Id.* (internal quotation marks omitted). Stancuna's allegations here spring from the same circumstances involved in *Wallingford,* i.e., investigations into potential unregistered vehicles on the Property. Haberski's conduct on March 23, 2004 constitutes an important background fact both in *Wallingford* and in this case. In addition, Sherman has submitted Stancuna's interrogatory answers from *Wallingford* in which Stancuna, when asked to identify all the facts supporting his contention that the Town of Wallingford harassed him, specifically listed Sherman's April 21, 2004 inspection. (*See* dkt. #23, Ex. C ¶11.) It is clear, then, that Sherman's conduct in this case was related in time, space, origin, and motivation to the events in Stancuna's prior lawsuit.

In the court's view, however, res judicata does not bar Stancuna's claims here because Sherman, who was not named as a defendant in *Wallingford,* is not in privity with the *Wallingford* defendants. "Privity traditionally has denoted a successive relationship to the same rights of property.... In its modern form, [however,] the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 367–68 (2d Cir.1995) (internal citations and quota-

tion marks omitted). "Generally, an employer-employee or agent-principle relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued." *Tibbetts v. Stempel,* 354 F.Supp.2d 137, 148 (D.Conn.2005) (quoting 18 Moore's Federal Practice 3d. § 131.40[3][f] (Matthew Bender ed.)).

"Official-capacity suits under § 1983 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *O'Connor v. Pierson,* 482 F.Supp.2d 228, 231 (D.Conn. 2007) (quoting *Monell v. N.Y. City Dep't of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "'As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" *Id.* (quoting *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Thus, in general, "public officials sued in their official capacities are deemed to be in privity with the entities that employ them." *Id.* (collecting cases).

"A government official sued in his or her personal capacity, however, is not considered in privity with the government." *Johnson v. County of Nassau,* 480 F.Supp.2d 581, 607 (E.D.N.Y.2007); *see Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *but see Shekhem'El–Bey v. New York,* 464 F.Supp.2d 329, 334 n. 3 (S.D.N.Y.2006); *Waldman v. Village of Kiryas Joel,* 39 F.Supp.2d 370, 382 (S.D.N.Y.1999). Although the Second Circuit does not appear to have expressly so held, a number of other circuits have held that government employees in their individual capacities are not in privity with their government em-

ployer. *See Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir.2003) ("[A] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."); *Andrews v. Daw*, 201 F.3d 521, 526 (4th Cir.2000) ("[W]e hold that a government official in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata."); *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir.1990) ("Res judicata does not apply when the parties appear in one action in a representative capacity and in a subsequent action in an individual capacity."); *Willner v. Budig*, 848 F.2d 1032, 1034 n. 2 (10th Cir.1988) ("Government employees in their individual capacities are not in privity with their government employer."); *Conner v. Reinhard*, 847 F.2d 384, 395–96 (7th Cir.1988); *Headley v. Bacon*, 828 F.2d 1272, 1279 (8th Cir.1987) ("[L]itigation involving officials in their official capacity does not preclude relitigation in their personal capacity."); *Roy v. City of Augusta, Maine*, 712 F.2d 1517, 1521–1522 (1st Cir.1983).

■ At all times relevant to this case, Sherman was a government employee. Nevertheless, as seen from the complaint, he is sued only in his individual, not official, capacity. (*See* dkt. # 1.) The distinction between individual and official capacity is significant. To begin with, official capacity claims for damages are not cognizable under § 1983. *See Stack v. City of Hartford*, 170 F.Supp.2d 288, 292 (D.Conn. 2001). Moreover, unlike in a lawsuit against a defendant in his official capacity, if the plaintiff prevails in a lawsuit against the defendant in his individual capacity, the defendant must satisfy the judgment out of his own pocket, rather than having the government entity pay the damages.

*See Graham*, 473 U.S. at 166, 105 S.Ct. 3099. In addition, different legal theories may be necessary to prove liability in a personal-capacity (as opposed to an official-capacity) case, and different defenses, such as qualified immunity, are available to a defendant who is sued in his personal capacity. *See id.* at 166–67, 105 S.Ct. 3099; *Conner*, 847 F.2d at 395. Indeed, in this case, Sherman has invoked the doctrine of qualified immunity. As a result, the court cannot find that privity exists here for res judicata purposes. Consequently, Stancuna's claims are not barred by the doctrine of res judicata, and the court shall analyze them under the summary judgment standard.

## B. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56.

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### C. FOURTH AMENDMENT

The Fourth Amendment to the United States Constitution reads as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The Fourth Amendment's search and seizure provisions are applicable to [state] defendants through the Fourteenth Amendment's Due Process Clause." *Tenenbaum v. Williams*, 193 F.3d 581, 602 n. 14 (2d Cir.1999) (citing *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

■ Stancuna alleges that Stancuna's conduct upon the Property deprived him of the Fourth Amendment right to be free from unreasonable searches. "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576

(1967) (Harlan, J., concurring)). It is well-settled that the Fourth Amendment protects the home and its curtilage; however, such protection does not extend to the home's "open fields," which "do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." *Oliver v. U.S.*, 466 U.S. 170, 179, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). In addition, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351, 88 S.Ct. 507.

■ Quite simply, the factual issues disputed by the parties preclude summary judgment here. If Sherman's recounting of the facts were true, i.e., if he only entered the Property via an open driveway and took pictures of vehicles that were in plain view either outside on the driveway or in the garage, the court agrees that there would be no constitutional violation. *See United States v. Reyes*, 283 F.3d 446, 465 (2d Cir.2002); *Krause v. Penny*, 837 F.2d 595, 597 (2d Cir.1988); *Nasca v. County of Suffolk*, No. 05–CV–1717 (JFB)(ETB), 2008 WL 53247, at *5 (E.D.N.Y. Jan. 2, 2008); *see also United States v. Titemore*, 437 F.3d 251, 259–60 (2d Cir.2006) (holding the defendant did not have a reasonable expectation of privacy in a porch and the track of lawn that a trooper used to reach its stairway).

For the purposes of this motion, however, the court cannot simply accept as true Sherman's version of the facts. Stancuna has testified that he himself saw Sherman actually inside the garage [3] using a video recorder. Stancuna expressed his surprise that the main door to his garage was open, the implication being that Sherman may

---

3. Given that there was a breezeway from the garage to the house, it appears that the garage was located near, and connected to, the main house.

have been the one to open it. That is, Stancuna alleges that Sherman, acting in his capacity an assessor for the Town of Wallingford, entered upon the Property, opened the garage door, entered the garage, and began video recording. There is no argument from the parties that such an invasion, absent a warrant or some kind of exigent circumstance, would constitute a Fourth Amendment violation.

In short, Stancuna's version of that day's events conflicts with Sherman's. Whether there was a Fourth Amendment violation hinges on whose version is believed. Determining what happened that day is a quintessential question of fact requiring credibility assessments of both Stancuna and Sherman. Needless to say, such is not the court's role for the purposes of summary judgment. Therefore, insofar as it argues that there was no Fourth Amendment violation, the motion for summary judgment (**dkt.# 23**) is **DENIED**.

### D. QUALIFIED IMMUNITY

█ Sherman argues that, even if a Fourth Amendment violation had occurred, he would be entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Supreme Court established the analysis for determining whether an officer is entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S.

194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. "[T]he next, sequential step is to ask whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

█ Here, the court finds that summary judgment on qualified immunity grounds is inappropriate. As the Second Circuit has held, "[w]hen a motion for summary judgment is made in the context of a qualified immunity defense, the question of whether the factual disputes are material is even more critical." *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992). As noted above, there are issues of material fact in this case that this court may not decide. These issues of fact are critical to determining whether Sherman was operating under a reasonable belief as to what kind of search he was permitted to conduct.

In addition, the court points out that the law regarding the general necessity of warrants for searches was clearly established well before April 21, 2004. *See Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Anobile v. Pelligrino*, 303 F.3d 107, 117 (2d Cir.2002). Moreover, a reasonable government official would know that, in the course of conducting his official duties, he could not simply open and enter[4] a garage located on private property

---

**4.** The court does not find that Sherman did,    in fact, open and enter the garage. For the

without a warrant or exigent circumstances. Therefore, Sherman is not entitled to qualified immunity. Consequently, insofar as it argues that Sherman is entitled to qualified immunity, the motion for summary judgment **(dkt.# 23)** is **DENIED.**

### E. TRESPASS

Stancuna next alleges that Sherman is liable for common law trespass. Under Connecticut common law, "[t]he essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." *City of Bristol v. Tilcon Minerals, Inc.*, 284 Conn. 55, 87, 931 A.2d 237 (2007) (internal quotation marks omitted). For the purposes of this analysis, the court accepts as true that Stancuna owned the Property. The court must also assume, for the purposes of summary judgment, that Stancuna's version of the facts is true, namely, that Sherman intentionally entered the Property via the driveway, and opened and entered the garage. In the court's view, such conduct would have interfered with Stancuna's "exclusive possessory interest" in the Property.

With regard to the injury element, the court notes that if Stancuna were to prevail on his trespass claim, he would be "entitled to damages based on the lost use value of the property [trespassed upon] and any harm caused by the trespass during the time of the defendants' occupation." *Durkin Village Plainville, LLC v. Cunningham*, 97 Conn.App. 640, 661, 905 A.2d 1256 (2006) (internal quotation marks omitted). Stancuna has not submitted evidence showing that Sherman actually damaged the Property. Nevertheless, as stated by the Connecticut Appellate Court,

[s]ome damage necessarily follows any wrongful invasion of another's property. This necessary damage is actual, as distinguished from the mere nominal damages involved in some casual and inoffensive tort; but it is nominal as distinguished from any specific damage suffered and proved. In [certain cases], some damage results from the mere invasion of the plaintiff's property rights, and its amount, not being determinable by proof, must be comparatively small and in that sense nominal.

*Matto v. Dan Beard, Inc.*, 15 Conn.App. 458, 489, 546 A.2d 854 (1988) (citing *Kelly v. Ivler*, 187 Conn. 31, 45–46, 450 A.2d 817 (1982)); *see McManus v. Roggi*, 78 Conn. App. 288, 303, 826 A.2d 1275 (2003). Based on the above language, the court cannot say that Stancuna's trespass claim fails as a matter of law. Consequently, with regard to the trespass claim, the motion for summary judgment **(dkt.# 23)** is **DENIED.**

### III. CONCLUSION

For the foregoing reasons, Sherman's motion for summary judgment **(dkt.# 23)** is **DENIED.**

---

purposes of this motion, however, the court has to resolve factual ambiguities in favor of the nonmovant.