**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHRIS WILLIS; MARY WILLIS, individually and Successors in Interest to Stephen Willis; JENNAFER URIBE, | No. 11-16915 |
| Plaintiffs - Appellants, | D.C. No. 1:09-cv-01766-LJO-DLB |
| v. | MEMORANDUM[*] |
| CITY OF FRESNO; GREG CATTON, Officer; DANIEL ASTACIO, Officer; JERRY DYER, Chief, | |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted April 15, 2013
San Francisco, California

Before: KOZINSKI, Chief Judge, and O'SCANNLAIN and N.R. SMITH, Circuit Judges.

Two Fresno police officers, Greg Catton and Daniel Astacio, shot Stephen

Willis to death in the parking lot of his apartment complex. His parents, Chris and

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Mary Willis, as well as his girlfriend, Jennafer Uribe,[1] sued Catton, Astacio, Chief of Police Jerry Dyer, and the City of Fresno.  Catton, Astacio, Dyer, and the City moved for summary judgment on all of the Willises' claims and prevailed.  The Willises timely appealed.  We affirm in part and reverse in part.

I

The Willises argue that genuine disputes of material fact remain as to their Fourth Amendment excessive-force claim.  We agree.  First, the Willises offered evidence suggesting that neither Catton nor Astacio identified himself as a police officer or warned Stephen to drop his gun before they began firing at him.  This disputed fact is material.  *See Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001) ("In the present case, the desirability and feasibility of a warning are obvious. . . .  There was ample time to give that order or warning and no reason whatsoever not to do so.").  Second, the Willises presented evidence—indeed, an apparent admission by one of the involved officers—suggesting that "by the time [Stephen] went and started to pull" the gun from its holster, the officers "had already fired and then started to move."  Catton said he "never saw, at that point, until I was [f]ace-off with him in front of the vehicles. . . .  That's when I saw the,

---

[1] Uribe is not a party to this appeal.

the pointed [gun]."[2]  This disputed fact is material.  *See Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011) ("The most important [*Graham*] factor is whether the individual posed an immediate threat to the safety of the officers or others.").  We need not evaluate the parties' differing accounts of the events that followed.  If "there is a triable issue of whether [the initial shooting] was itself excessive force . . . there is also a question regarding subsequent use of deadly force."  *Id.* at 879 (citing *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002)).

The district court erred in granting summary judgment to Catton and Astacio on the Willises' Fourth Amendment claim.[3]

II

The Willises contend that genuine disputes of material fact remain as to their Fourteenth Amendment "shock the conscience" claim.  We agree in part and disagree in part.  A rational juror could conclude that, after the officers approached Stephen's car, assuming Stephen's pistol was still holstered, the officers' initial

---

[2] We may consider Catton's statements to the Fresno Police investigator. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents.").

[3] The officers' brief attempt at a qualified-immunity defense falls short. They argue that because they did not use excessive force in the first place, they violated no "clearly established" Fourth Amendment right.  That is not an argument based on the "clearly established" prong of the qualified immunity doctrine; it is an argument on the merits of the claim—and it fails.

volley of gunfire reflected deliberate indifference to the risk of Stephen's death. But a rational juror could *not* conclude that, from the moment Stephen retreated to the back of the car to the point at which Catton fired the final bullet, Catton or Astacio acted with a "purpose to harm" unrelated to a legitimate law-enforcement objective. *See Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (concluding that the purpose-to-harm standard applies when "a suspect's evasive actions force the officers to act quickly"); *Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 373 (9th Cir. 1998) (noting that an officer's "use of force necessary to protect . . . [himself]" is a legitimate law-enforcement purpose).

The district court erred in concluding that no rational juror could find that Catton or Astacio's initial firing, before Willis began to move or attempted to draw his gun, shocked the conscience. With respect to subsequent events (from the time Willis started to engage in evasive maneuvers), the district court properly concluded that the officers' conduct did not shock the conscience, because it did not evince a purpose to harm unrelated to law-enforcement objectives.

III

The Willises argue that genuine disputes of material fact remain as to their supervisory-liability claim against Dyer. We disagree. The Willises fail to meet their burden of showing that Dyer himself "caused the deprivation of a federal

4

right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liablity' is a misnomer. Absent vicarious liability, each Government official . . . is only liable for his or her own misconduct.").

The district court did not err in granting summary judgment to Dyer on the Willises' supervisory-liability claim.

## IV

The Willises argue that genuine issues of fact remain as to their *Monell* claims against the City. We disagree. The Willises fail to show that "city policymakers [were] on actual or constructive notice that a particular omission in their training program cause[d] city employees to violate citizens' rights." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011); *see also Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (per curiam) (plaintiff must show "longstanding practice or custom which constitutes the standard operating procedure of the local government entity").

The district court did not err in granting summary judgment to the City on the Willises' *Monell* claims.

## V

5

The Willises argue that genuine disputes of material fact remain as to their negligence-based wrongful death claim. We agree. *See* Cal. Gov. Code § 815.2(a); *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011) ("Because the Fourth Amendment violation alleged . . . also suffices to establish the breach of a duty of care under California law, we reverse the district court's dismissal of [plaintiff's] state law negligence claim, as well.").

The district court erred in granting summary judgment to the officers and the City on the Willises' state-law wrongful death claim.

## VI

For the foregoing reasons, the judgment is **AFFIRMED IN PART AND REVERSED IN PART**. Each party shall bear its own costs.[4]

---

[4] Catton, Astacio, Dyer, and the City's motion to strike portions of appellants' opening brief is DENIED.